**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Linda Gail Stamps RAGLAND,
Defendant–Appellant.**

No. 95–5336.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 4, 1995.

Decided Jan. 4, 1996.

Harold B. McDonough, Asst. U.S. Atty. (argued and briefed), Nashville, TN, for plaintiff-appellee.

Mariah A. Wooten (argued and briefed), Federal Public Defender's Office, Nashville, TN, for defendant-appellant.

Before: JONES, NELSON, and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Defendant Linda Gail Ragland appeals the district court's enhancement of her sentence for abuse of a position of trust under § 3B1.3 of the United States Sentencing Guidelines, following her pleas of guilty to charges of embezzlement and bank fraud. We conclude that defendant did not occupy a position of public or private trust, as contemplated by the guideline.

**I.**

For nearly thirteen years, defendant worked at the First American National Bank in Cookeville, Tennessee, as a customer service representative. Her duties included opening accounts, assisting customers in balancing their accounts, and preparing certificates of deposit ("CDs") for signature by bank officers. Customers who desired to open an account or purchase a CD were directed to defendant, since tellers were not authorized to perform those transactions. It was her handling of CDs that landed defendant in prison.

The ordinary procedure for issuing a CD called for defendant to receive the customer's payment to the bank for the CD, defendant to type the CD, a bank officer to sign it, defendant to carry the payment to a teller, and for the customer to then receive the CD. Defendant had no authority to sign the certificate, and her role in this process was essentially secretarial. She apparently had some discretion to refuse to accept checks that appeared questionable, but once the customer and the form of payment were deemed satisfactory, defendant was required to follow the normal procedure.

At some point around 1987, defendant began pocketing funds paid by some bank customers for CDs, forging the signatures of bank officers on CDs, and then issuing them without noting the transactions in the bank's records. This practice turned into a Ponzi scheme of sorts when defendant used some of the stolen funds to make interest payments due on the CDs. By the time the scheme collapsed, defendant had issued approximately $1,167,000 worth of unrecorded certificates.

When the bank inevitably caught on, defendant was indicted and pleaded guilty to one count of bank embezzlement and four counts of bank fraud in violation of 18 U.S.C. §§ 656, 1005. The presentence report of the probation department recommended a two-level sentence enhancement for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. Defendant objected to this recommendation, but the district court decided that the enhancement applied, stating in open court at the sentencing hearing that

looking at it from the standpoint of the depositors [defendant] had a position of trust. She could take their money at any time, and she could not account for it, and she certainly took steps to conceal the crime. She had discretion in opening the accounts, and the only restriction on it was the fact that if they had trouble with a fellow before, the account holder before, she had to consult with the officer because she couldn't turn it down, but if she had

dealings with them before on accounts she had discretion to use it, and certainly her position facilitated the commission and concealment of the offense.

Having made the two-level enhancement, the district court sentenced defendant to imprisonment for the maximum allowed under the guidelines, fifty-seven months.

## II.

■■■ The sentencing guidelines provide for a two-point increase in a defendant's offense level "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The application notes found in the commentary to this guideline define "public or private trust" as follows:

1. "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. *This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank*

*teller* or hotel clerk because such positions are not characterized by the above-described factors.

. . . .

2. "Special skill" refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.

U.S.S.G. § 3B2.3, comment. (n. 1 and 2) (emphasis added). For the enhancement to apply, defendant must have been in a position of trust with respect to the victim of the crime. *United States v. Moored*, 997 F.2d 139, 145 (6th Cir.1993). We review *de novo* the district court's conclusion that defendant held a position of trust for purposes of § 3B1.3. *See United States v. Dixon*, 66 F.3d 133, 135 (6th Cir.1995).

■■■ To determine whether defendant was in a position of trust with respect to First American National Bank, the victim in this case,[1] it is necessary to examine the purpose underlying the guideline enhancement. The commentary to the guideline draws a distinction between situations involving attorneys, bank executives, and doctors on the one hand, and those involving bank tellers and hotel clerks on the other. The element of professional or managerial discretion is said to be the key. And, by focusing on the deference ordinarily accorded the substantial discretionary judgment possessed by the holder of such a position of trust, the sweep of the commentary's definition is significantly narrowed, assuring that the enhancement will not apply to every person who handles another's property. *See United States v. West*, 56 F.3d 216, 220 (D.C.Cir.1995); *United States v. Cuff*, 999 F.2d 1396, 1398 (9th Cir.1993).

■■■ Clearly, then, the notion of "trust" embodied in the guideline is not the one contemplated by the ordinary dictionary con-

---

1. The district court apparently analyzed the trust relationship in terms of defendant and the depositors. The real victim in this case, however, was the bank, since it was ultimately responsible for the CDs. Even with respect to the depositors, the record does not support the conclusion that a trust relationship existed. The depositors did not deal with defendant as an investment advisor or trustee. Rather, they expected her to carry out wholly ministerial tasks, such as balancing their checkbooks or preparing certificates of deposit.

cept of reliance or confidence for, in that sense, a bank trusts its tellers not to steal from the till. Rather, as used in the guideline, "position of public or private trust" is a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary. The lesser degree of direct supervision exercised over fiduciaries or senior employees as opposed to cashiers, and hence the greater difficulty in detecting their transgressions, may explain part, but not all, of the distinction. *United States v. Williams,* 993 F.2d 1224, 1228 (6th Cir.1993); *Cuff,* 999 F.2d at 1398. By viewing as especially culpable persons who "abuse" their positions of trust, the guideline also recognizes the time-honored legal concept that theft by deceit is to be dealt with more harshly than simple theft. Whereas ordinary theft is by and large an impersonal act, theft by deceit, like its cousin fraud, is entirely personal. Where an individual makes himself particularly vulnerable by entrusting another with substantial authority and discretion to act on his behalf and then relies upon and defers to that person, a decision to take advantage of that trust and vulnerability is particularly abhorrent, as it undermines faith in one's fellow man in a way that the ordinary pickpocket simply cannot.

### III.

■ Turning to the facts of this case, and comparing them with the commentary to § 3B1.3, it is readily apparent that defendant did not occupy a "position of public or private trust, as contemplated by the guideline." Her position was not characterized by substantial discretionary judgment that is ordinarily given considerable deference. In fact, she was not authorized to exercise any meaningful discretion. While she did carry out her theft over several years, it was only by blind luck that she was not discovered sooner. She executed her scheme by forging bank officers' signatures and pocketing funds left for deposit by bank customers. The circumstances of defendant's situation are more nearly like an "embezzlement or theft by an ordinary bank teller" than "an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexu-

al abuse of a patient by a physician under the guise of an examination."

Furthermore, there is no indication that what little autonomy defendant did possess in any way facilitated her scheme, since defendant had only the discretion to refuse to accept certain checks and perhaps to deal with certain customers. The government stresses that, unlike tellers, defendant did not have to submit a daily transaction report. That distinction is irrelevant, because a bank teller could just as easily have evaded detection temporarily by pocketing deposits and failing to record the transactions.

Because the district court erroneously applied U.S.S.G. § 3B1.3 to enhance defendant's sentence, we **vacate** that upward adjustment of the sentence and this cause is **remanded** to the district court for resentencing.