*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0082P (6th Cir.)
File Name:  00a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 99-5116

MICHAEL LYNN TRIBBLE,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 98-00019—Thomas G. Hull, District Judge.

Submitted:  February 3, 2000

Decided and Filed:  March 8, 2000

Before:  MERRITT and MOORE, Circuit Judges;
HEYBURN, District Judge.[*]

———————————

[*]The Honorable John G. Heyburn II, United States District Judge for
the Western District of Kentucky, sitting by designation.

————————————

**COUNSEL**

**ON BRIEF:** David L. Leonard, LEONARD & KERSHAW, Greeneville, Tennessee, for Appellant. Neil Smith, UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

————————————

**OPINION**

————————————

MERRITT, Circuit Judge.    This appeal arises from defendant Tribble's conviction, upon a guilty plea, for misappropriation of postal funds under 18 U.S.C. § 1711. Tribble was employed by the United States Postal Service as a window clerk in Kingsport, Tennessee.    He used his position to embezzle approximately $42,000 during late 1996 and early 1997.    At sentencing, Tribble was assessed a two-point enhancement under United States Sentencing Guidelines §3B1.3, which provides for such an enhancement if the crime was facilitated by a "position of trust."    Tribble now appeals the District Court's decision that his position as a postal window clerk was a position of trust.    We review *de novo* the District Court's determination that Tribble occupied a position of trust for the purpose of the Sentencing Guidelines.    *See United States v. Ragland*, 72 F.3d 500 (6th Cir. 1996); *United States v. Dixon*, 66 F.3d 133 (6th Cir. 1995).

According to the facts in this case, Michael Lynn Tribble was employed as a window clerk in the Kingsport, Tennessee, post office from 1991 until 1997.    Tribble was routinely issued stamps and money orders as a function of his job.    In addition, Tribble had access to the IRT or Integrated Retail Terminal, a computerized system in which all transactions were to be logged.    From September 1996 through February 1997, Tribble received nine checks marked to "Postmaster" from business customers for resetting their postage meters. Tribble accepted the cash and entered the transactions into the

In the case before us, three factors support the government's contention that postal window clerks (as opposed to postal employees in general) occupy a position of trust. Postal window clerks have access to the IRT computer system, they are issued a store of money orders, and they are audited only infrequently. As outlined in the "Agreed Factual Basis" (Joint Appendix 37), Tribble's embezzlement scheme could not have been accomplished without access to the IRT computer system. While it appears that Tribble could not have accomplished the scheme if he had been audited on a more frequent basis, the actual content of the daily financial reports he was required to submit and the rigorousness of his supervision on a daily basis was not fully ascertainable from the record. Therefore, Tribble's actions could be construed to fall within the language of the application note implicating positions which make the commission or the concealment of the offense easier. As we previously noted, however, that is not the decisive issue.

We do not believe that this system of embezzlement is any more advanced than one that would have been employed by a typical bank teller with access to a bank's computer system, nor does the position require more trust than that reposed in a bank teller or hotel clerk. A postal window clerk fills a clerical position, one which does not require the type of trust in the discretion of a fiduciary or manager as the application notes indicate is required under § 3B1.3. As this Court has previously noted, just because we trust a person to handle another's property in the course of their job does not mean they occupy a "position of trust" for the purpose of § 3B1.3. *See Ragland*, 72 F.3d at 502. Even though Tribble's position significantly aided him in the commission and concealment of his offense, we do not believe that fact overrides the inherently clerical nature of his position.

For the reasons outlined above, we REVERSE the decision of the District Court enhancing Tribble's sentence by two points for his abuse of a position of trust under § 3B1.3 of the Sentencing Guidelines.

computer. He later voided the transactions and retained the cash. Postal window clerks are audited only infrequently, but they are required to submit a daily financial report. The report is a printout of the transactions conducted using the IRT. Because he voided the transactions, they did not appear as cash received in his reports. Tribble was then able to issue money orders to himself from the excess cash in his possession, thus avoiding the problem of attempting to cash the checks.

Under United States Sentencing Guideline § 3B1.3, "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." The application notes explain that a position of trust is:

> characterized by *managerial discretion* (i.e. substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment *would not apply in the case of an ordinary bank teller or hotel clerk* because such positions are not characterized by the above-described factors.

U.S.S.G. § 3B1.3, comment n.1 (emphasis added). The application notes further provide that due to the special nature of the United States mail, any postal worker who engages in

the destruction or theft of the mail will be deemed to be in a position of trust. This rather extensive discussion of the application of this guideline was added by amendment in 1993.

Our Circuit has not specifically considered whether a postal window clerk should be assessed the two-point enhancement for position of trust. We have decided two cases with respect to other types of employment which are illustrative. In *United States v. Ragland*, 72 F.3d 500 (6th Cir. 1996), we examined Sentencing Guideline § 3B1.3 and the application notes to determine whether a bank customer service representative occupied a "position of trust." In making that determination, the panel held that "[t]he element of professional or managerial discretion is said to be the key." *See id.* at 502. The panel found that the bank customer service representative did not occupy a position of trust because she executed her embezzlement scheme in the same simple way that a bank teller would have embezzled the money, and it noted that she was not authorized to exercise any "meaningful discretion" in her position given that her job duties differed from those of a bank teller only in that she could open accounts for customers and prepare certificates of deposit, which required the signature of a supervisor. *See id.* at 501, 503.

In a previous case addressing § 3B1.3, a panel of this court noted in dicta that it would have found an insurance company employee ("cashier"), who drafted checks to be mailed to creditors and reconciled the bank statements after the canceled checks were returned, to be in a position of trust. *See United States v. Allison*, 59 F.3d 43 (6th Cir. 1995). She accomplished her scheme by altering the names on the checks after they had been signed using the correction device on a manual typewriter, thereby avoiding detection. Once the checks were returned with the bank statements, she simply removed her name and added the proper creditor's name back again. The panel emphasized the fact that the employee was the last to handle the checks before they left and the first to see them once they returned, noting that no one else could have accomplished this particular scheme. *See id.* at 46.

While this panel seemed to rely more on her lack of supervision than on the level of discretion that a "cashier" would have, the panel only reached this issue in dicta, deciding the case on other grounds.

The government brings to our attention the several cases from other Circuits which have held that postal window clerks occupy a position of trust. *See, e.g., United States v. Carroll,* 129 F.3d 117, 1997 WL 693587 (4th Cir. 1997) (holding that a postal window clerk occupies a position of trust); *United States v. Bottroff,* 124 F.3d 213, 1997 WL 577260 (9th Cir. 1997) (same); *United States v. Milligan*, 958 F.2d 345 (11th Cir. 1992) (same); *see also United States v. Melendez*, 41 F.3d 797 (2d Cir. 1994) (citing *Milligan* as supporting the holding that a postal worker who was one of a small group of postal workers who had access to the registered mail room key and who therefore had access to large sums of money without the "tight accounting controls that restrict a bank teller" occupied a position of trust). The cases repeatedly emphasize that the daily audits of the typical bank teller differ greatly from the audits performed only every few months on postal window clerks. In addition, the cases note that access to the IRT computer system and to stamps and money orders helped elevate the position to one of trust.

We are not persuaded by the reasoning of those cases. According to our own precedent, and to the application notes in the Sentencing Guidelines themselves, the level of discretion accorded an employee is to be the decisive factor in determining whether his position was one that can be characterized as a trust position. The cited cases have too often emphasized, we believe erroneously, the supervision an employee receives. The examples given in the application notes (physician, attorney, and fiduciary) imply that the inherent nature of the work itself should naturally convey a substantial degree of discretion to the defendant concerning how to properly administer the property of another or otherwise act in their best interest.