## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's enhancement of Gilliam's sentence by two levels for abuse of a position of trust.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0008P (6th Cir.)
File Name:  03a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

ANTHONY GILLIAM,
    *Defendant-Appellant.*

No. 00-6365

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No.  00-20058—Jon Phipps McCalla, District Judge.

Submitted:  November 5, 2002

Decided and Filed:  January 10, 2003

Before:  KEITH, KRUPANSKY, and CLAY, Circuit
Judges.

_____

### COUNSEL

**ON BRIEF:**   Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for
Appellant.   Christopher E. Cotten, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge. Defendant-Appellant, Anthony Gilliam ("Gilliam"), appeals his sentence following a guilty plea to charges of attempting to possess with intent to distribute a total of approximately 1.5 kilograms of cocaine. Gilliam argues on appeal that the district court erred in imposing upon him a two-level enhancement for "abuse of a position of trust" pursuant to U.S.S.G. § 3B1.3. For the reasons set forth below, we **AFFIRM** the district court's enhancement of Gilliam's sentence by two levels for abuse of a position of trust.

## I.  BACKGROUND AND FACTUAL SUMMARY

Gilliam was indicted by the Federal Grand Jury for the Western District of Tennessee on March 16, 2000. (J.A. at 8). The two-count indictment charged Gilliam with attempting to possess with intent to distribute a total of approximately 1.5 kilograms of cocaine, in violation of 21 U.S.C. § 846. On June 15, 2000, Gilliam entered a plea of guilty to both counts of the indictment. (J.A. at 10).

A sentencing hearing was held on September 28, 2000 wherein Gilliam was sentenced to seventy-eight months of imprisonment to be followed by four years of supervised release. (J.A. at 13). The district court held that Gilliam had abused a position of trust and increased his Guideline base offense level by two, while also imposing a $12,500.00 fine and a $200.00 special assessment. Judgment was entered on September 29, 2000. Gilliam's timely notice of appeal was filed on October 6, 2000. (J.A. at 17).

A factual account of the offense conduct perpetrated by Gilliam is contained in paragraphs 5-16 of the presentence report (PSR) prepared by the United States Probation Office. (J.A. at 86-89). The salient portion of this summary revolves around a scheme hatched by Gilliam to surreptitiously obtain

federal buildings. Yet, the public trust and expectation that these officers will refrain from criminal conduct is no less than that placed upon employees of the Federal Protective Service, Capital Police, or United States Marshals Service. In keeping with this principle, a contract security officer who engaged in a criminal enterprise that involved illegal access or use of government property is no less guilty of violating the public trust than a member of any of the aforementioned federal agencies would be if he or she attempted to do the same.

Similarly, in the instant case, Gilliam was employed by a government contractor to provide substance abuse counseling to individuals under federal probation supervision. This task represents what is essentially a public function of our country's federal criminal justice system that is traditionally entrusted to the United States Probation Office. As with similar governmental activities and employees, the public has a right to expect and trust that those in the employ of the government for the purpose of rehabilitating criminals will refrain from entering into the kind of criminal enterprises that necessitated such rehabilitation in the first place. Furthermore, the resulting "trust" in these individuals by the populace extends not only to those employees who are directly employed by the government, but also to indirect, or contracted employees like Gilliam. The "position of trust" in which Gilliam functioned as a probation counselor for the United States Probation Office was not abated by the contractual nature of his employment as compared to a directly-employed governmental counterpart. The fact that he was a contracted employee did not affect either the responsibilities or substance of Gilliam's counseling position. We therefore find that the district court did not err in finding that Gilliam abused a position of trust, or in subsequently applying the two-level enhancement as provided for by U.S.S.G. § 3B1.3.

(e.g., physician-patient, lawyer-client, officer-organization, etc.).  *Brogan*, 238 F.3d 783.

As was indicated in the PSI filed prior to Gilliam's sentencing, the general public was the victim in the instant case.  Alternatively, Gilliam asserts that because he worked for a private employer, which was merely contracted by the government for counseling services, he never held a position of trust with respect to society.  We find this rationale disingenuous.  Similar circumstances may apply to any number of persons who are "technically" employed by a private company and yet occupy a position of trust with respect to the public.

One example of a type of private employee who occupies a position of trust relative to society at large is that of a prison guard.  Almost commonplace now is the governmental practice of contracting with private companies for the administration of both state and federal prison facilities.  A guard at one of these facilities performs the same tasks as his or her counterpart at a federal correctional facility employed by the Bureau of Prisons.  As asserted by the government in the case at bar, "[t]he public's trust, and legitimate expectation, that these prison custodians will not engage in criminal conduct with inmates does not change simply because the paychecks of those performing this traditionally public function are signed by a private entity."

Moreover, as was stated by our sister circuit in the case *United States v. Brown*, 7 F.3d 1155 (5th Cir. 1993), "[i]t is axiomatic that the public places tremendous trust in prison employees that they will not conspire with inmates to violate the law." *Id*. at 1161.  Thus, an employee of a private corporation who smuggles contraband into a correctional facility operated by said corporation has abused the public trust to the same degree as a deputy jailer who commits the identical offense.

Additionally, it has become equally commonplace for the federal government to rely upon contract officers to perform many of the policing functions traditionally carried out in

a quantity of cocaine on consignment through a "reliable" confidential informant ("CI") to whom he had been assigned to counsel.  At the time of the instant offense, Gilliam was employed as a part-time alcohol and drug counselor for Janet Scott, Ph.D.[1]  In his capacity as a counselor, Gilliam had been assigned to provide counseling to an individual currently on federal probation supervision.  This unnamed individual is also the CI involved in the caper planned by Mr. Gilliam.

According to the facts detailed in the PSI, the CI reported that over the span of three weeks Gilliam had contacted him in an effort to obtain several kilograms of cocaine "on consignment".  (J.A. at 86).  Gilliam wished to be "set up" with the drugs by the CI in order to conduct a transaction with potential buyers.  Apparently, Gilliam was persistent in his desire to recruit the CI for this illicit purpose.  He even indicated to the CI that he had previous experience in the sale and distribution of illegal drugs and knew of people who would probably buy the drugs. (J.A. at 87).  Unbeknownst to Gilliam, the CI decided to apprize authorities with the Organized Crime Unit of the Drug Enforcement Agency (OCU) of the particulars of Gilliam's proposition.  At this point, the OCU launched an operation in order to investigate Gilliam's role in this alleged conspiracy.  To this end, the CI was instructed to feign cooperation with Gilliam. (J.A. at 86-89).

After participating in several meetings and telephone conversations regarding the conspiracy, the CI and Gilliam arranged for a final meeting, at which point Gilliam would take possession of the drugs.  On February 22, 2000, the CI phoned Gilliam with instructions to meet a female named "Cookie" in front of a neighborhood grocery store. The CI informed Gilliam that Cookie would have in her possession a package containing a quantity of cocaine, which she would

---

[1]Dr. Scott operates a private counseling agency, Janet Scott & Associates, with which the United States Probation Office (Western District of Tennessee) contracts for substance abuse counseling services.

give to him upon his arrival. Cookie was, in fact, an undercover agent with the OCU.

Upon meeting the undercover agent, Gilliam took possession of two marked bundles of imitation cocaine which had been placed in a plastic shopping bag. (J.A. at 88). Gilliam was taken into custody a short time later.

## II. STANDARD OF REVIEW

The decision of a lower court to apply U.S.S.G. § 3B1.3 is treated as a question of law by our Court. We review *de novo* the district court's determination that a defendant occupied a position of trust for the purposes of the Sentencing Guidelines. *United States v. Tribble*, 206 F.3d 634, 635 (6th Cir. 2000). *See also United States v. Ragland*, 72 F.3d 500, 502 (6th Cir. 1996).

A "position of trust" under the Guidelines is one "characterized by professional or managerial discretion." U.S.S.G. § 3B1.3, comment (n. 1). Moreover, "[p]ersons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *Ibid*. Our Court held in *Tribble* that "the level of discretion accorded an employee is to be the decisive factor in determining whether his position was one that can be characterized as a trust position." 206 F.3d at 637.

## III. ANALYSIS

We find that the district court did not err in enhancing Gilliam's sentence for abuse of a position of trust under U.S.S.G. § 3B1.3. Gilliam argues that he did not abuse the public trust because he was employed by a government contractor and not the government; however, we do not find his argument convincing. Gilliam worked as a drug counselor for an employer that was under contract with the United States Probation Office to provide counseling services to individuals placed under probation supervision. In this capacity, Gilliam occupied a position which implied that he

served an essentially public function involving considerable responsibility with respect to both the government and society at large.

In essence, we find that the general public is the victim in a situation such as the instant case. Accordingly, Gilliam's argument that he was a government contractor instead of a government employee and therefore not bound to "uphold the public trust" is a matter of mere semantics. This rationale in no way diminishes the fact that Gilliam was performing a public function at the behest of the government.

The Guidelines state that "[i]f the defendant abused a position of public or private trust, or used a specific skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels [the defendant's base offense level]." U.S.S.G. § 3B1.3. As a probation counselor contracted by the United States Probation Office, Gilliam was without question employed in a position of considerable trust, which he abused by attempting to engage in illicit drug transactions with a client. Accordingly, we find that the enhancement was properly applied in this case.

We have previously indicated that the rationale for the sentencing enhancement at issue here is virtually analogous to the type of punishment routinely administered for violating a fiduciary duty, which involves a higher duty than is placed upon persons that do not occupy positions of trust. *Ragland*, 72 F.3d at 503. The "position of trust" arises almost as if by implication "when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs." *United States v. Brogan*, 238 F.3d 780, 783 (6th Cir. 2001) (quoting *United States v. Ragland*, 72 F.3d 500, 503 (6th Cir. 1996)). Additionally, the Guidelines offer examples of proper application of the enhancement which translate directly to the types of relationships where a "fiduciary duty" exists by implication