RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

MARK W. MAY,

                *Defendant-Appellant.*

No. 07-3465

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 02-00032—Walter H. Rice, District Judge.

Argued: January 20, 2009

Decided and Filed: June 9, 2009

Before: COLE and GIBBONS, Circuit Judges; BELL, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. S. Robert Lyons, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. S. Robert Lyons, Alan Hechtkopf, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

### OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant Mark W. May appeals for the second time the sentence imposed by the district court upon his jury conviction for willfully evading his personal income tax liability, in violation of 26 U.S.C. § 7201, and

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1

failing to account for and pay over payroll taxes, in violation of 26 U.S.C. § 7202. The Bureau of Prisons released May on December 15, 2008; however, we find that his appeal is not moot. We further find that three of the multiple issues May raises on appeal have merit; therefore, we must vacate May's sentence and remand this case once again to the district court for the purpose of considering whether May's term of supervised release should be two or three years and the entry of an order of restitution reflecting the correct amount owed.

## I.

May was the registered agent, majority shareholder, sole director, and president of Maranatha Financial Group, Inc., a fee-based financial advisory firm in Dayton, Ohio. Testimony at trial from numerous employees revealed that May kept a tight control on who could open the company's mail. Specifically, no one but May himself could open any mail that appeared to originate from banks, government agencies, or law firms. As part of this strict control over company correspondence, May instructed Maranatha's accountant to withhold the proper amount from employees' paychecks but never authorized the accountant to write any checks to transfer these funds to the Internal Revenue Service ("IRS"). No one other than May had the authority to sign checks for the company. When tax authorities commenced investigating Maranatha's activities in March 1994, they discovered that the corporation had never filed either an income tax return or an employment tax return. The IRS further determined that May had failed to withhold taxes from his own paycheck but nonetheless had stated on his personal tax form that such funds had been withheld and paid to the government.

As the IRS investigation into Maranatha's activities intensified, May decided to close Maranatha. On Friday, December 20, 1996, Maranatha effectively ceased operations. The next Monday, December 23, USA Financial opened in Dayton. USA Financial opened its offices in a new building but maintained almost exactly the same employees as Maranatha. The "new" firm provided the same fee-based financial planning services as its predecessor and used the same copyrighted documents that Maranatha had employed in its financial planning programs. May required employees

to send daily sales reports for USA Financial to his home. However, managers instructed employees that in the event anyone should call USA Financial and ask to speak to Mark May, the employees should respond "Mark who?" or otherwise indicate that no one by that name worked there. Craig Herl, who had served as a junior executive at Maranatha, was the titular president of USA Financial. Employees at USA Financial realized that despite the new letterhead, May "was the boss." Trial Tr. at 172.

On April 9, 2002, a federal grand jury charged May with two counts of willfully evading his personal income tax liability for calendar years 1995 and 1996, in violation of 26 U.S.C. § 7201, and four counts of willfully failing to account for and pay over payroll taxes for the quarters ending April 30, July 31, and October 31, 1996, as well as January 31, 1997, in violation of 26 U.S.C. § 7202. May entered a plea of not guilty on all counts and proceeded to trial. A jury convicted May of all six counts of the indictment on September 26, 2003. The district court conducted the original sentencing hearing on December 16, 2003. May made numerous objections to the sentencing and restitution calculations found in the Presentence Investigation Report ("PSR"). The district court rejected May's challenges and imposed a sentence of seventy-two months incarceration with three years of supervised release afterward and ordered May to pay $728,090 in restitution. May appealed to this court, and a unanimous panel affirmed May's convictions but vacated the sentence so that the district court could resentence May in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *United States v. May*, 174 F. App'x 877, 878 (6th Cir. 2006). We specifically refused to rule on any of May's assignments of error in regard to his sentence and instead "urge[d May] to present those to the district court on remand." *Id.* at 879.

On January 29, 2007, the district court held May's resentencing hearing. Both in his pre-hearing motions and at the hearing itself, May objected to the calculations contained within the PSR. May objected to the grouping of the Section 7201 and Section 7202 offenses together, the calculation of the amount of taxes May evaded, the application of the sophisticated concealment enhancement under United States

Sentencing Guidelines ("U.S.S.G.") Section 2T1.1 (1995),[1] and the enhancement for abuse of a position of trust under Section 3B1.3. The district court rejected each of these challenges. On counts one through five, the court sentenced May to concurrent sixty month terms. On count six, the district court sentenced May to a consecutive term of six months for a total sentence of sixty-six months. May's counsel stated that he objected to the proposed restitution terms found in the PSR but was not ready to argue those points at the sentencing hearing. The district court allowed May's attorney to file a motion to reopen the judgment within ten days of the sentencing hearing to address these concerns. The government did not object to this procedure but did request that the district court place on the record that "the restitution is being applied as a condition of supervised release" to "clear up the legal issue." Resentencing Tr. at 32. The district court so stated.

In his post-hearing motion to reopen the judgment, May alleged three assignments of error as to the restitution calculations. The district court rejected these arguments and ordered May to pay $728,090 in restitution as a condition of supervised release. The district court further ordered the defendant "to pay on the outstanding balance owed to the Ohio Attorney General," to refrain from having any association "with the Financial Services Industry, in any capacity whatsoever, except as a consumer," and "to file, within the first 6 months of supervision, amended tax returns for all relevant years" as additional conditions of supervised release. Amended Judg. at 4. May timely filed his notice of appeal.

## II.

## A.

Pursuant to a December 29, 2008 order of this court, the parties were directed to file letter briefs addressing the question of whether May's December 15 release from prison rendered any of his issues on appeal moot. The government responded on

---

[1] All citations to the Sentencing Guidelines in this opinion are to the 1995 version under which the district court sentenced May.

December 30, 2008, and argued that May's release rendered all issues except those concerning restitution and supervised release moot. (Govt. Let. at 2.) May responded on January 5, 2009, and citing to our decision in *United States v. Maken*, 510 F.3d 654 (6th Cir. 2007), argued that all of May's assignments of error remain extant. (Def. Let. at 1.)

In *Maken*, we held that "[e]ven when an appellant has been released from custody, his case is not moot so long as the appeal 'potentially implicates' the length of the appellant's supervised release term." *Id.* at 656 n.3 (citation omitted). Maken, like May, appealed from a conviction for tax evasion under 26 U.S.C. § 7201. *Id.* at 655. Section 5D1.2 of the United States Sentencing Guidelines governs May's term of supervised release. The section provides that the district court may sentence May to "at least two years but not more than three years" of supervised release. U.S.S.G. § 5D1.2(a)(2). The district court sentenced May to three years of supervised release. Because on any remand, the district court would be free to reduce May's term of supervised release from three to two years, we hold that none of May's issues on appeal are moot. *Maken*, 510 F.3d at 656 n.3 (noting that this is especially the case post-*Booker*).

**B.**

May first argues that the district court erred by increasing his offense level by two levels for "abus[ing] a position of public or private trust" under Section 3B1.3 of the Sentencing Guidelines. May asserts that even taking everything the government says as true concerning his level of control over Maranatha and USA Financial, his conduct did not warrant application of the enhancement. May further warns that accepting the government's argument would mean that anyone who failed to pay taxes would suffer the enhancement. At oral argument, the government clarified that its primary assertion is that the victim in this case is the IRS and that May was in a position of trust vis-à-vis the IRS as defined by the Guidelines. The Government further cited the recent holding of the Third Circuit in *United States v. Lombardo*, 281 F. App'x 78 (3d Cir. 2008), to support its contention that the abuse-of-trust enhancement is applicable under these facts.

"We review *de novo* the District Court's determination that [the defendant] occupied a position of trust for the purpose of the Sentencing Guidelines." *United States v. Tribble*, 206 F.3d 634, 635 (6th Cir. 2000) (citations omitted). Section 3B1.3 of the Guidelines instructs that the term "public or private trust" is "characterized by professional or managerial discretion." U.S.S.G. § 3B1.3 n.1. These individuals "are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *Id.* A court should only apply the enhancement if "the position of trust . . . contributed in some significant way to facilitating the commission or concealment of the offense." *Id.* Consequently, while the enhancement would be proper as to "a bank executive's fraudulent loan scheme," it would not be appropriate "in the case of an embezzlement or theft by an ordinary bank teller." *Id.*

Our case law has also constrained the circumstances under which the abuse-of-trust enhancement can apply. In *United States v. White*, 270 F.3d 356, 371 (6th Cir. 2001), we held that "[t]he abuse-of-trust enhancement may only be applied where the defendant abused a position of trust with the *victim* of his charged conduct." (emphasis added). "[T]he level of discretion accorded an employee is to be the decisive factor in determining whether his position was one that can be characterized as a trust position." *Tribble*, 206 F.3d at 637. However, district courts must be aware that the term "trust" as used in the Guidelines is "a term of art" rather than "the ordinary dictionary concept" of trust. *United States v. Ragland*, 72 F.3d 500, 502-03 (6th Cir. 1996).

While the government did not concede that the IRS was the only victim of May's scheme within the meaning of the Sentencing Guidelines, it was correct to make that line of argument its primary focus. In *Ragland*, we considered the application of the abuse-of-trust enhancement to an analogous set of facts. Ragland was a bank teller convicted of embezzling customers' funds meant for deposit. 72 F.3d at 501. After reviewing the text of Section 3B1.3, we held that the bank, not the depositors, was the actual victim in the case. *Id.* at 502. The application of the enhancement by the district court was therefore improper. *Id.* at 503. We advised that the application was to apply where the defendant's crimes had "undermine[d] faith in one's fellow man." *Id.* Simply put, the

enhancement was not meant to apply "to every person who handles another's property." *Id.* at 502.

The facts of May's conviction for failing to account for and pay over payroll taxes align with *Ragland*. The money deducted from the employees' paychecks was meant for the IRS just as the customers' deposits were meant for the victim bank. *Cf. id.* at 501. Thus, the IRS, not the employees, is the victim of May's Section 7202 offense. The question then becomes whether May held a position of trust in relation to the government. May's role would appear to be more like that of a bank teller – May's only duty was to collect the money and pass it along to the government, as a teller's only job is to collect depositors' money and pass it along to the bank – rather than that of a bank executive. *See* U.S.S.G. § 3B1.3 n.1; *Ragland*, 72 F.3d at 503; *cf. United States v. Guidry*, 199 F.3d 1150, 1159-60 (10th Cir. 1999) (finding in the context of a tax-evasion prosecution that the defendant did not occupy a position of trust vis-à-vis the government). May had no discretion. The law simply required May to collect the payroll taxes from his employees and transfer the funds to the IRS. *Cf. Tribble*, 206 F.3d at 637 (noting that the level of discretion afforded the defendant is the "decisive factor").

The government's citation to the Third Circuit's decision in *Lombardo* is inapposite. While it is true that the Third Circuit affirmed the application of a Section 3B1.3 enhancement in the case of a defendant convicted of failing to pay over payroll taxes, it did so in the face of a completely different argument. 281 F. App'x at 82. Lombardo argued before the Third Circuit that applying the abuse-of-trust enhancement to a conviction for failing to pay over payroll taxes was always impermissible double counting because the government had to prove the defendant abused a position of trust to gain a conviction under Section 7202. *Id.* The Third Circuit rejected Lombardo's double-counting argument. May does not argue before us that the government had to prove an abuse of trust to gain a conviction under Section 7202. Instead, May's argument is the mirror opposite of Lombardo's: there is not an abuse of trust at all because May was not in a position of trust relative to the IRS. The Third Circuit did not

perform any analysis as to who the actual victim was and where the defendant stood in relation to the victim because Lombardo did not raise that issue on appeal. *See id.* The Tenth Circuit has faced the same issue before us today squarely and agrees with the conclusion that we have reached. *See Guidry*, 199 F.3d at 1159-60. Because May was not in a position of trust relative to the IRS, we hold that the district court erred in enhancing his sentence under Section 3B1.3 of the Sentencing Guidelines.

## C.

May's second assignment of error is that the district court erred by impermissibly double counting the amount of the tax loss to determine the proper offense level under the Guidelines. The government readily admits that the district court double counted the tax loss but argues that the Sentencing Guidelines and our prior case law require such double counting. When reviewing the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and mixed questions of law and fact *de novo*. *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005).

The amount May alleges the district court impermissibly double counted comes from the aggregation of the tax losses caused by May's evasion of his personal income tax liability and his failure to account for and pay over payroll taxes in his role as president of Maranatha Financial. In his role as Maranatha president, May had Maranatha's accountant list the amount of May's personal income tax liability on his corporate salary as deducted from his paycheck for payroll tax purposes. No amount of money was actually withheld from May's corporate paycheck. Nonetheless, May listed the payroll tax amounts supposedly deducted on his personal income tax forms and then used those phantom tax payments to reduce his remaining income tax liability. The issue of double counting arises because May only owed the amounts in question as tax once. May could either deduct the tax payments from his paycheck and pay them as payroll taxes or he could wait and pay them as a part of his personal income tax return. Despite the fact that the taxes were only owed once, the government contends that the Sentencing

Guidelines demand that we count the tax loss twice, once for the payroll tax loss calculation and once for the personal income tax evasion calculation.

Section 3D1.3 of the Sentencing Guidelines provides that "[i]n the case of counts grouped together . . . the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two." U.S.S.G. § 3D1.3(b). Turning to Chapter Two, the application notes require that "[i]f the offense involves both individual and corporate tax returns, the tax loss is the aggregate tax loss from the offenses taken together." U.S.S.G. § 2T1.1 n.7. In *United States v. Cseplo*, 42 F.3d 360 (6th Cir. 1994), we sought to construe these two provisions with regard to a defendant who stood convicted of willfully underreporting his wholly-owned corporation's income and willfully attempting to evade his own income taxes.[2] We determined that the plain language of § 2T1.1 required the tax losses associated with each charge to be aggregated. *Id.* at 363. The government asserts that because the same Guideline sections are applicable to May's offenses, the district court properly aggregated the total losses for May's convictions under §§ 7201-7202.

Despite the initial appeal of the government's argument, the facts of May's case differ from those we and other circuits have previously decided. *Cseplo* involved a scheme whereby the defendant skimmed money from a corporation he owned and converted the money to his own uses. 42 F.3d at 361. *See also United States v. Patti*, 337 F.3d 1317, 1323-24 (11th Cir. 2003) (adopting *Cseplo* in the context of a defendant who willfully underreported corporate income and defrauded the United States government); *United States v. Spencer*, 178 F.3d 1365, 1368-69 (10th Cir. 1999) (holding that aggregation is appropriate where defendant skimmed money from the corporation to supplement his legitimately approved salary).[3] Therefore, in *Cseplo* the government was legitimately entitled to the tax twice. The money was subject to taxation as corporate income and then subject to taxation again on the individual level

---

[2]Thus, the defendant violated 26 U.S.C. § 7201 and § 7206(1).

[3]One reason for the dearth of cases involving the joint prosecution of offenses under Sections 7201-7202 may be that willful failure to pay over payroll taxes is "a felony that is infrequently prosecuted." U.S.S.G. § 2T1.6. Prosecuted cases involving corporate skimming are far more frequent.

as illicit personal income.  *Cseplo*, 42 F.3d at 363-64.  *See also James v. United States*, 366 U.S. 213, 218 (1961) (embezzled money is taxable as individual income).

As the government has admitted, the funds on which May failed to pay taxes were only subject to being taxed *once*.  May could pay them as payroll taxes or pay them on his individual income tax form. (Gov't Br. at 37-38.)  Section 2T1.1(c)(3) requires that "[i]f the offense involved willful failure to pay tax, the tax loss is the *amount of the tax that the taxpayer owed* and did not pay."  (emphasis added).  Thus, Section 2T1.1(c)(3) applies here because both of the statutes under which the jury convicted May require willfulness.  *See* 26 U.S.C. §§ 7201-7202.  Once again, the government does not argue that May owed the tax twice. (Gov't Br. at 22-23.)  Because the plain text of the Sentencing Guidelines requires that only amounts actually owed should be aggregated, the district court erred in counting the tax loss twice.  On remand, the district court should calculate the amount of taxes May owed on his own income.  The district court should then add to this amount the amount of payroll taxes from the other employees of Maranatha that May collected but did not actually pay over to the government.  These amounts may be aggregated because the payroll tax owed for the other employees was a separate taxable amount that was owed.  *See*  U.S.S.G. § 2T1.1(c)(3).[4]

### D.

May's next argument is that the district court erred in its calculation of the amount of restitution owed.  May's contention is closely related to the calculation of the proper tax loss amount for the purpose of calculating the Guidelines' base level discussed above.  May once again argues that the district court improperly double counted the amount of restitution by counting the tax May owed on his own income twice. The government here concedes that May is correct and that the district court erred in its restitution calculation.  The government therefore requests that we reduce the amount of May's restitution order by $84,776 and remand to the district court to allow

---

[4]Because we have found that May's sentence was procedurally unreasonable, we need not address May's arguments concerning his sentence's substantive reasonableness. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007) (stating that appellate courts should review for substantive reasonableness "[a]ssuming that the district court's sentencing decision is procedurally sound").

the government to pursue for the third time its request for additional restitution based upon the amount of accrued interest between May's original missed tax payments and the district court's restitution order.

The government is correct to concede that the district court erred in its restitution calculation. The amount in dispute comes from the district court's order concerning restitution for Count 2 of the indictment, which concerned May's evasion of personal income taxes for tax year 1996. The district court ordered restitution on Count 2 in the amount of $93,547, the same amount by which May seeks to have this court reduce the award. That amount constitutes May's entire tax liability for tax year 1996. However, the record reveals that a portion of the $93,547 was also factored into the government's restitution calculation as to the amount May failed to pay as payroll tax for Maranatha. This is because May falsely claimed on his personal income tax form to have deducted a total of $84,776 from his paycheck and tendered it to the government with the company's payroll taxes. May deducted this amount from his tax liability for 1996, leaving him owing $8,771 more in personal income taxes to add up to his total 1996 tax liability of $93,547. Thus, the district court erroneously added the $84,776 to both the restitution amounts for the back payroll tax liability and May's past due 1996 personal taxes when the entire amount would have been payable to the government only once, either as a part of May's payroll taxes or on his personal 1040 form. As shown by the income tax examiner's form entered into evidence, May's restitution for Count 2 should be only $8,771, the extra amount of tax May owed in addition to the amount May falsely claimed to have paid earlier in payroll taxes. Deducting the $84,776 that the district court erroneously double counted in its restitution calculations yields a new total restitution amount of $643,314.[5] We therefore modify the district court's restitution order accordingly. We also decline the government's invitation to allow it on remand to argue once again that May should pay accrued interest. The government will receive statutory interest on the amount awarded, *see* 18 U.S.C. § 3612(f), and the government

---

[5]The government's brief also computes the total restitution incorrectly. It states that the total amount due is $634,314. (Gov't. Br. at 38.) This is most likely a typographical error. ($728,090 - $84,776 = $643,314).

does not argue that the district court abused its discretion in declining to award accrued interest in its restitution order.  *See United States v. Guardino*, 972 F.2d 682, 686 (6th Cir. 1992) (noting the abuse-of-discretion standard of review).  Consequently, we decline to give the government yet a third bite at the interest apple.[6]

E.

Finally, May raises numerous other issues for our review as to the propriety of his sentence, all of which we determine to be meritless.  May first alleges that the district court erred by imposing a sophisticated means enhancement under Section 2T1.1(b)(2) of the Guidelines.  Contrary to May's assertions, May did much more than merely fail to pay taxes "plain and simple." (Def. Br. at 11.)  The record clearly demonstrates that May closed Maranatha and opened a new financial advisory firm, USA Financial, to hide his ownership interest.  May also established an S-Corporation and trust to funnel money to his wife in order to disguise the distribution of profits from both Maranatha and USA Financial.  The district court did not clearly err in applying the Section 2T1.1(b)(2) enhancement under such circumstances.  *See, e.g.*, *United States v. Middleton*, 246 F.3d 825, 848 (6th Cir. 2001) (opening accounts in the names of corporations in which one ostensibly has no interest justifies enhancement); *United States v. Clear*, 112 F. App'x 429, 431 (6th Cir. 2004) (structuring transactions through one's relatives in order to disguise the funds' origin merits enhancement).

May next argues that the district court erred by enhancing his sentence under Section 3C1.1 of the Sentencing Guidelines by finding that May committed perjury during his trial testimony.  We disagree.  The district court correctly followed the procedure we established in *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997), in applying the enhancement.  Relying on its own independent judgment, the district court identified three specific perjurious statements May made on the stand:  that

---

[6]May also argues that the district court erred by ordering restitution under the Mandatory Victims Restitution Act.  *See generally United States v. Gilpatrick*, 548 F.3d 479, 482-84 (6th Cir. 2008) (discussing the changes wrought by the passage of the act).  May's argument is without merit, as the sentencing-hearing transcript clearly indicates that the district court ordered restitution as a condition of supervised release.  *See* 18 U.S.C. § 3563(b)(2) and § 3583(d)(3).

another Maranatha employee was responsible for making payroll tax deposits; that Craig Herl was the actual head of USA Financial; and that May did not know that the payroll taxes for 1995 and 1996 had not been paid.  The district court then properly noted the mountain of testimony that contradicted each of these three statements.  Finally, the district court found that May made these statements willfully.  While the district court did not rule that each of these statements was material, we will not remand a case back to the district court solely for a finding as to materiality because we may answer such a question of law ourselves.  *See United States v. Seymour*, 38 F.3d 261, 264 (6th Cir. 1994).   The three false statements are clearly material because had the jury believed them, it would have had difficulty finding that May "willfully attempt[ed]" to evade his tax obligations.  26 U.S.C. §§ 7201-7202.  Thus, we find that the district court did not err in enhancing May's sentence for perjury.

Likewise, the district court did not err in mandating special conditions of supervised release.  "We review the imposition of a supervised-release condition for abuse of discretion." *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006) (citation omitted).  Requiring someone convicted of six counts of tax evasion to file amended tax returns within six months of release is not an abuse of discretion.  Such a condition is also encompassed within an orally stated requirement "to cooperate with the Internal Revenue Service to pay all outstanding taxes, penalties, and interest."  Resentencing Tr. at 29.

Nor was it an abuse of discretion for the district court to order May "to have no association with the Financial Services Industry, in any capacity whatsoever, except as a consumer."  Amended Judg. at 4.  We have held that "[e]ven individual fundamental rights safeguarded by the United States Constitution may be denied or limited by judicially exacted special conditions of supervised release, as long as those restrictions are directly related to advancing the individual's rehabilitation" and preventing recidivism. *United States v. Kingsley*, 241 F.3d 828, 839 n.15 (6th Cir. 2001) (internal quotes and citations omitted).  May used his position as head of a financial services company to embezzle money meant for his employees' payroll taxes.  Thus, the district

court would be understandably concerned about May's working in the financial services industry again when he had already demonstrated that he could not be trusted with other people's money. *Cf. United States v. Hughes*, 964 F.2d 536, 542 (6th Cir. 1992) (upholding condition that prevented convicted union official from exercising "any decision-making authority" over any account that "receives any of its funds from a labor organization" for political activity). While May may be correct that he is not able to work as a janitor at Goldman Sachs under the terms of the district court's order, he may still work as a janitor at Google, Burger King, or any other company that does not give financial advice.

We further find that the district court did not impermissibly delegate its authority to establish a repayment plan to the IRS. The district court clearly stated at the resentencing hearing that it:

> anticipate[d] a payment plan being submitted to it within 30 days of the defendant's beginning of supervised release that would set forth the nature of the regular payments, not only during supervised release, but for the period within which those payments can be demanded and accepted and paid.

Resentencing Tr. at 29. Here, the district court delegated the establishment of an initial payment plan to the IRS, which the district court would then approve or reject upon submission. Our precedents make clear that this is an acceptable procedure. *See Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001) (holding that a "sentencing court does not abrogate its judicial authority when it delegates the setting of a restitution-payment schedule . . . provided that the court first establishes the amount of restitution").

May does not fare any better with his argument that the district court erred by requiring him to pay on the balance he owed to the Ohio Attorney General. The district court ordered May to pay on his $186,949 settlement with the Ohio Attorney General's office. May entered into the settlement to satisfy numerous customer complaints about refund guarantees Maranatha offered but not did honor. One can fairly say that individuals who do not pay income or payroll taxes for multiple years demonstrate a

problem with paying obligations as they become due.  Continuing to remain in good standing with the Ohio Attorney General on this debt will allow May to develop a habit of paying obligations when they are due.  Thus, the requirement serves both to protect the public – by collecting a settlement meant to halt fraudulent conduct – and discourage recidivism.  *See United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992) (noting that a condition of supervised release "must be upheld" if it meets these twin goals of probation).  The condition is also sufficiently related to his conviction, as demonstrated by the fact that May's tax evasion conviction stems from the fraudulent manner in which he operated both Maranatha and USA Financial.  *Cf. Carter*, 463 F.3d at 530-33.  We therefore hold that the district court did not err by ordering May to pay an obligation that he legally owed.  *See United States v. Hatchett*, 918 F.2d 631, 643-44 (6th Cir. 1990) (holding that it was not an abuse of discretion to require a defendant to pay "all back taxes").

## III.

For the foregoing reasons, we vacate the sentence imposed by the district court and remand with instructions to enter an order of restitution reflecting the correct amount of $643,314.  As May has served the full term of his original sentence of incarceration, the district court should employ the new Guidelines' calculations mandated by this opinion with an eye toward determining May's term of supervised release.