*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0356P (6th Cir.)
File Name: 03a0356p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*          No. 02-5290

JANALEE WILSON,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 00-10065—James D. Todd, Chief District Judge.

Argued: September 11, 2003

Decided and Filed: October 6, 2003

Before: MERRITT, MOORE, and GILMAN, Circuit
Judges.

———————

## COUNSEL

**ARGUED:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. R. Leigh Grinalds, ASSISTANT UNITED
STATES ATTORNEY, Jackson, Tennessee, for Appellee.
**ON BRIEF:** Stephen B. Shankman, M. Dianne Smothers,

OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR
THE WESTERN DISTRICT OF TENNESSEE, Memphis,
Tennessee, for Appellant. R. Leigh Grinalds, ASSISTANT
UNITED STATES ATTORNEY, Jackson, Tennessee, for
Appellee.

———————

## OPINION

———————

   MERRITT, Circuit Judge. Appellant Janalee Wilson, a
former emergency room nurse, injected her husband with
insulin on three separate occasions in an effort to cause his
death so that she could collect the proceeds from several life
insurance policies. On July 29, 1996, her husband died as a
result of severe hypoglycemia brought on by an injection of
insulin. Soon thereafter, she submitted claims to various
insurers and succeeded in collecting nearly $300,000.00 in
life insurance proceeds.

   On September 19, 2001, a federal jury convicted Janalee
Wilson of three counts of mail fraud in violation of 18 U.S.C.
§ 1341, eight counts of wire fraud in violation of 18 U.S.C.
§ 1343, seven counts of money laundering in violation of 18
U.S.C. § 1957, and returned a special verdict of liability on
one count of criminal forfeiture pursuant to 18 U.S.C. § 982.
At sentencing, the district court granted the government's
motion for an upward departure based on the fact that a death
resulted from her fraudulent scheme, increasing her base
offense level from 23 to 33, the level corresponding to second
degree murder under the Guidelines. The sentencing judge
then added a two-level enhancement because Wilson used her
special skill as a nurse to perpetrate the fraud. Using a
combination of concurrent and consecutive sentences on the
eighteen counts of conviction, the district court sentenced
Wilson to 210 months in prison, the maximum term allowed
for offense level 35 and a criminal history category of I.

Wilson appeals, arguing in her brief that (1) the evidence was insufficient as a matter of law to establish beyond a reasonable doubt that she caused her husband's death as part of a scheme to defraud; (2) the district court erred by enhancing her sentence based on her "special skill" as a nurse under § 3B1.3 of the Guidelines; and (3) the district court erred in granting an upward departure of ten levels based on the evidence and the jury's finding that she caused her husband's death as part of her scheme to defraud. Since the briefs were filed in this case, a panel of this Court issued its decision in *United States v. Mayle*, 334 F.3d 552 (6th Cir. 2003), upholding a district court's granting of a 23-level upward departure under U.S.S.G. § 5K1.2 based on the district judge's finding by a preponderance of the evidence that the defendant murdered his victim in order to facilitate a mail fraud offense. At oral argument in this case, Federal Public Defender Stephen B. Shankman advised that, in light of our decision in *Mayle*, Wilson chose to discuss only the point regarding the special skill enhancement under § 3B1.3. We find no error in the findings of the court below on any of the issues raised, and we address here only the point discussed at oral argument.

Section 3B1.3 provides that the district court may increase the offense level by two if "the defendant . . . used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. A "special skill" is defined as "a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing." *Id.* § 3B1.3 cmt. 2. Janalee Wilson was a licensed practical nurse working in an emergency room. In order for the enhancement to apply, her skills as a licensed practical nurse must have made it "significantly 'easier' for [her] to commit . . . the crime." *United States v. Lewis*, 156 F.3d 656, 659 (6th Cir. 1998) (internal quotation marks omitted). We review a district court's factual finding regarding the application of § 3B1.3 for clear error. *Id.* at 658.

On June 12, 1996, Mr. Wilson was admitted to Methodist Hospital with extremely low blood sugar. Records indicate that Janalee Wilson told a nurse and other emergency workers that she had given her husband a shot of Toradal (a prescription pain medication) at home because family members were sick with nausea and vomiting. He recovered from the incident. Medical tests later revealed that the high level of insulin in Mr. Wilson's body came from an injectable source. Janalee Wilson was a Type II diabetic, requiring insulin to control her blood sugar, and had access to insulin and needles at the hospital.

On July 10, 1996, Mr. Wilson was again admitted to the emergency room with low blood sugar. The defendant told hospital workers that she had given her husband a shot of Phenergan (a prescription nausea medication) the night before. Tests once again indicated a high insulin level. Mr. Wilson was referred to an endocrinologist, who concluded that Mr. Wilson's glandular system functioned normally.

On July 28, 1996, Janalee Wilson was at work and called a neighbor at around 9 P.M. and asked him to check on her husband. She told the neighbor that when she left for work earlier that evening, her husband was sick and she was worried about him. She later told others that she had checked his blood sugar before she left for work. The neighbor found Mr. Wilson unconscious in a chair. On the direction of Janalee Wilson, paramedics took Mr. Wilson to a different hospital from the one he had been taken to for the previous episode. Once again, he suffered from dangerously low blood sugar. He stayed only a few hours, and the doctor released him to the care of Janalee Wilson based on his understanding of her training and expertise. (J.A. at 152-53.)

The next morning, Mr. Wilson was taken by paramedics to the emergency room with low blood sugar. Mr. Wilson later died as a result of a prolonged episode of hypoglycemia caused by an injection of insulin. At trial, the district judge specifically instructed the jury that, in order to convict Janalee

Wilson of mail fraud, it must first find that she caused her husband's death by injecting him with insulin.

At sentencing, the district court ruled that "the defendant did use a special skill, that of being a nurse. She injected the defendant with Toradol and Phenergan, and she said she did, and she told that to the doctors in an effort to cover up the fact that she had, in fact, injected him with insulin. She was using a special skill." (J.A. at 356.)

Title 18, § 3742(e) provides for the standard of appellate review in guidelines cases, stating in relevant part:

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and . . . shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e) (2003). We cannot say the district court's factual findings were erroneous, or the "application of the guidelines to the facts" unreasonable. The evidence in the record fully supports the finding that Wilson's training and licensing as an emergency room nurse enabled her to obtain medications and administer them in an injectable form in order to set the stage for her crime and to divert suspicion from herself. Although a member of the general public might be able to buy insulin and hypodermic needles at a drug store, such a lay person would not have been able to rely on her skills as a nurse to obtain pain medication in injectable form and to administer it to her family member at home in order to provide logical explanations for the injections as a way to conceal her crime. Without known nursing expertise and experience, the layperson's claim to have medicated her husband at home with injectable forms of prescription medications would no doubt have prompted further investigation. Indeed, Mr. Wilson's treating physician, Dr. David M. Larsen, testified that typically he provides

injectable pain medications only to terminal cancer patients, but that he "certainly could have" made an exception with Janalee Wilson because she was a nurse. (*See* J.A. at 55.) As noted above, another physician witness testified that he felt comfortable releasing Mr. Wilson to the care of Janalee Wilson on the night of July 28, 2003 because of her special training as a nurse and expertise. In short, her special skill as a nurse made it significantly 'easier' for [her] to commit . . . the crime." *United States v. Lewis*, 156 F.3d at 659 (affirming the two level enhancement for use of a special skill where the defendant was convicted of fraud for overbilling Medicaid by exaggerating the nature of medical procedures performed).

The sentence is AFFIRMED.