UNITED STATES of America,
Plaintiff–Appellee,

v.

Claire E. FREEMAN, Defendant–
Appellant.

No. 02–3541.

United States Court of Appeals,
Sixth Circuit.

Nov. 13, 2003.

Thomas E. Getz, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

David L. Doughten, Robert A. Dixon, Cleveland, OH, for Defendant–Appellant.

Before SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Claire E. Freeman, the former Chief Executive Officer of the Cuyahoga Metropolitan Housing Authority, was convicted of theft from a federally funded program, mail fraud, and making false statements to a financial institution in connection with a loan application. On appeal, Freeman contends that: (1) the jury instructions were improper; (2) the district court improperly enhanced her sentence pursuant to the Sentencing Guidelines for using "more than minimal planning"; (3) the district court improperly enhanced her sentence pursuant to the Sentencing Guidelines for "abusing a position of trust"; and (4) her counsel provided ineffective assistance. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Procedural History

On February 13, 2002, Claire E. Freeman was found guilty by a jury on three counts: (1) theft of a federally funded program in violation of 18 U.S.C. § 666; (2) mail fraud in violation of 18 U.S.C. § 1341; and (3) making a false statement to a financial institution in connection with a loan application in violation of 18 U.S.C. § 1014.

At the sentencing hearing on April 24, 2002, the district court determined Freeman's offense level to be 17 and her Criminal History Category I, yielding a sentencing range of 24 to 30 months. The district court granted Freeman a two-level downward departure and sentenced her to 18 months' imprisonment to be followed by two years of supervised release.

### B. Factual Background

On October 23, 1989, while working for the Department of Housing and Urban

Development ("HUD"), Freeman purchased a $225,000 townhouse located at 1414 Leslie Avenue (the "townhouse") in Alexandria, Virginia. Freeman took out mortgages on the townhouse.

In 1990, Freeman and Ronnie Davis, also a HUD employee, relocated to Cleveland, Ohio to work, respectively, as Chief Executive Officer ("CEO") and Chief Financial Officer of the Cuyahoga Metropolitan Housing Authority ("CMHA"). Davis later became CMHA's Chief Operating Officer ("COO"). CMHA was created to provide affordable housing to residents of Cuyahoga County, Ohio. It is overseen by a board of five commissioners (the "Board") and its budget consists almost entirely of federal funds from HUD.

Freeman's 1990 employment contract was approved by the Board and included a provision concerning relocation expenses, which stated: "CMHA shall fully reimburse the executive director for all expenses incurred in connection with her relocation for this position and will pay the reasonable cost of a relocation firm engaged by the executive director to assist in her relocation activities."

In December 1993, Freeman refinanced the mortgage on the townhouse through Merrill Lynch Credit Corporation ("Merrill"). As part of her loan application, and in order to receive a more favorable loan package, Freeman submitted a fictitious federal income tax return. Freeman falsely stated that the townhouse was her primary residence when, in fact, she rented out the townhouse and lived in Ohio during the relevant time period.

In processing her application, Merrill independently determined that Freeman's primary residence was in Ohio. In order to receive the more favorable loan package, Freeman executed a "Second Home Rider" in which she agreed not to rent the townhouse and to use it only as a personal, secondary residence. Nevertheless, Freeman continued to rent the townhouse to tenants.

In addition, when Merrill raised concerns about Freeman's payment history with respect to the original mortgage, Freeman submitted to Merrill a handwritten cover letter, explaining that CMHA had "worked out a method of payment that will correct the late payment history." Attached to the cover letter was a letter on CMHA stationery, dated December 22, 1993, and addressed to Davis. This letter purported to authorize Davis, as COO of CMHA, to make interest payments on Freeman's loan a perquisite of her employment contract. The letter appeared to have been signed by three of the five CMHA commissioners—Karen H. Coats, Dwayne Browder, and Dr. Consuelo Sousa. However, at trial, Coats, Browder, and Sousa each denied signing the letter and testified that the Board never authorized payments to be made on Freeman's mortgage out of public funds.

Freeman did ultimately obtain a mortgage from Merrill, and CMHA made regular payments—totaling $49,607.17—on it. Of these payments, CMHA check number 2749, in the amount of $2,068, was sent via the United States Postal Service to Merrill's Illinois office.

In August 1993, Freeman applied for and obtained a $50,000 "bridge loan" from Society National Bank ("Society"), which is now known as Key Bank. In support of her loan application, a letter, dated July 17, 1993, purportedly signed by Coats, Browder, and Sousa, was sent to Ronald Warzel of Society, authorizing the COO of CMHA to pay quarterly interest on a bridge loan in the amount of $50,000 to $60,000 for the townhouse. At trial, Coats, Browder, and Sousa denied signing this letter as well and testified that the Board never ap-

proved CMHA's paying interest on Freeman's personal loan. Society, however, had never verified the authenticity of the letter, and it approved the loan based on the guarantees in the purportedly forged letter from CMHA.

Between August 1993 and November 1995, Freeman caused $4,053.42 in CMHA funds to be paid to Society as quarterly interest payments on her personal loan. The CMHA commissioners denied authorizing these payments. On November 3, 1995, Freeman caused CMHA check number 2081, in the amount of $50,689.00, to be issued to Society to make a final payment on this loan. This check was paid by CMHA out of the CMHA Veteran's Housing Fund.

Count One of the Indictment alleged that Freeman converted public funds exceeding $5,000 by causing mortgage payments to be made on the townhouse out of the CMHA Veteran's Housing Fund.

Count Two alleged that Freeman used the United States mails to transmit documents with the purpose of defrauding Merrill and CMHA. In furtherance of the alleged scheme to defraud, it was alleged that Freeman made a materially false statement that the townhouse was her primary residence; sent a forged letter from CMHA to Merrill to appease Merrill's concerns about her late payment history; caused CMHA to make payments on her Merrill loan; and used the United States mails to send at least one of these payments.

Count Three alleged that Freeman made materially false statements to Society in order to obtain the $50,000 bridge loan by sending Society a forged letter from CMHA, falsely indicating that CMHA had authorized interest payments on this loan.

At trial, despite the testimony of Board members to the contrary, Freeman maintained that CMHA had authorized all of the disputed expenditures as part of her executive compensation package. Freeman denied that she had forged any signatures, although she admitted submitting a fictitious income tax return to Merrill.

## II. ANALYSIS

We now address Freeman's claims that: (1) the jury instructions were improper; (2) her sentence should not have been enhanced for using "more than minimal planning"; (3) her sentence should not have been enhanced for "abusing a position of trust"; and (4) her counsel provided ineffective assistance.

### A. Jury Instruction

Freeman contends that the jury instruction for Count One, the charge pursuant to 18 U.S.C. § 666, which criminalizes "theft concerning a federally funded program," improperly precluded the jury from considering Freeman's defense, namely, that the funds and benefits in question had been authorized by the CMHA pursuant to the terms of her employment contract.

To prove a violation of 18 U.S.C. § 666(a)(1)(A), the government must demonstrate that: (1) the defendant is an agent of an organization, State, local or tribal government, or an agency of such a government; (2) the defendant embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—(i) is valued at $5,000 or more, and (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; and (3) such organization, government, or agency receives at least $10,000 in federal assistance in any

one year period. *See* 18 U.S.C. § 666(a)(1)(A), (b).

Title 18 U.S.C. § 666(c) exempts certain conduct from the reach of a § 666 violation. Specifically, § 666 "does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). Freeman claims that the jury instruction failed to make clear that the jury should acquit her if it concluded that she received the funds in question as "bona fide salary ... or other compensation paid ... in the usual course of business."

"Our inquiry into jury instructions is limited to whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." *United States v. Wells,* 211 F.3d 988, 1002 (6th Cir.2000). "This court may reverse a judgment on the basis of improper jury instructions only if the instructions, when viewed as a whole, were confusing, misleading and prejudicial." *Id.* We do not judge a particular jury instruction "in artificial isolation," rather, we view it "in the context of the overall charge." *Id.* (citing *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

However, where no objection to the jury instructions was raised below, this Court reviews the instructions for plain error. *United States v. Jones,* 108 F.3d 668, 670 (6th Cir.1997) (en banc); *see* FED. R.CRIM. P. 52(b). Finding plain error requires a court to make the following determinations:

First, it must conclude that the district court committed unwaived error. Second, the error must be plain, that is, clear and obvious under current law. Third, the court must find that the error affected a substantial right of the defendant by prejudicially influencing the outcome of the district court proceedings. Where these conditions are met, the court will find plain error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Taylor,* 102 F.3d 767, 770 (6th Cir.1996) (internal citations and quotations omitted). "An instruction is not plainly erroneous unless there was 'an egregious error, one that directly leads to a miscarriage of justice.'" *United States v. King,* 169 F.3d 1035, 1040 (6th Cir.1999) (quoting *United States v. Busacca,* 863 F.2d 433, 435 (6th Cir.1988)). Freeman concedes that counsel failed to object to all but one aspect of the jury instructions she now challenges on appeal.

With respect to the count concerning 18 U.S.C. § 666, the district court instructed the jury as follows:

Count 1, as I said, accuses the defendant of theft concerning a program receiving federal funds. The relevant statute on this subject is Section 666 of Title 18 of the United States Code. That statute provides, in pertinent part:

Whoever, if the circumstances described in subsection (b) of this section exists [sic]: 1. Being an agent of an organization, or of a state, local or Indian tribal government, or any agency thereof, embezzles, steals, obtains by fraud, or otherwise without authority, knowingly converts to the use of any person other than the rightful owner or intentionally misapplies property that, 1, is valued at $5,000 or more, and 2, is owned by, or is under the care, custody or control of such an organization, government or agency, shall be guilty of an offense against the United States.

Now subsection (b) says:

The circumstances referred to in subsection (a) of this section is that the organization, government or agency receives, in any one-year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance.

(J.A. 229–30.)

The district court summarized the allegations set forth in Count One of the Indictment and then set forth the elements of a § 666 offense as follows:

In order to sustain a conviction for this offense, the government must prove the following three essential elements beyond a reasonable doubt: First, that the defendant was an agent of the CMHA at the time of the offense. Second, that the defendant embezzled, stole, obtained by fraud, willingly converted, or intentionally misapplied property worth at least $5,000, which was under the control, care, or supervision of CMHA. And, third, that the offense occurred during a time in which CMHA received in excess of $10,000 in federal assistance in any one-year period.

(*Id.*)

The district court then defined the various relevant terms pursuant to the statutory definitions and the definitions set forth in the Eighth Circuit's model jury instructions. *See* EIGHTH CIRCUIT MODEL JURY INSTRUCTION, Elements of the Offense, 18 U.S.C. § 666(a)(1)(A) (2003).

The district court explained the exception pursuant to 18 U.S.C. § 666(c) and discussed how the jury should consider Freeman's various defenses:

With regard to the $5,000 amount mentioned in the statute, this amount does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed in the usual course of business. "In the usual course of business" refers to acceptable commercial and business practices. So, for example, the value of a yearly salary, if bona fide, should not be considered in establishing the $5,000 valuation.

If you find that the government has proved all of the elements of theft concerning a program receiving federal funds beyond a reasonable doubt, then you should find the defendant guilty. If, on the other hand, you find that the government has not proved even one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

The defendant asserts that the CMHA board authorized all of the expenditures at issue in this case. Specifically, the defendant asserts that the board affirmatively authorized: 1, payment of the interest on the mortgage for her Virginia property; 2, certain payments in connection with a bridge loan obtained from Key Bank; and 3, the use of Title V funds for all purposes for which they were used. If you find the CMHA board authorized the payments that the government now claims were wrongful, you may consider that authorization in connection with your assessment of whether the government has proved beyond a reasonable doubt that the defendant acted willfully, deliberately, or with the intent to deceive or misappropriate CMHA property, or engaged in otherwise unauthorized or unjustified acts.

Absent board authorization, however, it is not a defense to the crime of theft concerning a program receiving federal funds to say that the CMHA board was negligent or sloppy, or could have done something more than it did to prevent misapplication, embezzlement, conversion, or fraud. In other words, if you find that the government has proved all of the elements of theft concerning a

program receiving federal funds beyond a reasonable doubt, you must find the defendant guilty even if the misapplication, embezzlement, conversion, or fraud might not have occurred if the board had better internal controls or had acted with greater care.

(J.A. 233–35.)

First, Freeman claims that 18 U.S.C. 666(c) is an element of a § 666 offense that the government must prove beyond a reasonable doubt. This claim is without merit. Section 666(c) is an exception to a § 666 offense; it is not an element of the offense. *See, e.g., McKelvey v. United States*, 260 U.S. 353, 356–57, 43 S.Ct. 132, 67 L.Ed. 301 (1922) (stating the rule that "an indictment ... founded on a general provision defining the elements of an offense need not negative the manner of an exception ... it is incumbent on one who relies on such exception to set it up and establish it."). This Court has previously defined the elements of a § 666 offense precisely as the district court did in this case. *See United States v. Valentine*, 63 F.3d 459, 462 (6th Cir.1995); *see also United States v. Phillips*, 219 F.3d 404, 410 (5th Cir. 2000); EIGHTH CIRCUIT MODEL JURY INSTRUCTION, Elements of the Offense, 18 U.S.C. § 666(a)(1)(A) (2003). Thus, the district court properly described the elements of a § 666 offense.

■ Second, Freeman claims that the instructions were erroneous in stating that "the statute prohibits a defendant from intentionally misapplying or misappropriating funds, even if the funds are used for otherwise legitimate purposes." At trial, counsel made a specific objection to this portion of the instruction, so plain error review of this claim is inappropriate.

The language used by the district court was based on the Second Circuit's decision in *United States v. Urlacher*, 979 F.2d 935, 938 (2d Cir.1992). The Eighth Circuit model instruction uses similar language and also cites to *Urlacher*. EIGHTH CIRCUIT MODEL JURY INSTRUCTION, Elements of the Offense, 18 U.S.C. § 666(a)(1)(A) (2003). As the court in *Urlacher* properly explained, while the first four prohibitions in § 666—the prohibitions against embezzling, stealing, obtaining by fraud, and converting—concern any possible taking of money for one's own use or benefit, the fifth prohibition—the prohibition against the "intentional misapplication" of funds— must include the intentional misapplication of funds for legitimate purposes in order to avoid statutory redundancy. *Urlacher*, 979 F.2d at 938. As such, the district court's instruction "provide[d] the jury with a sound basis in law with which to reach a conclusion" and therefore, was appropriate.

■ Third, Freeman claims that the district court improperly suggested to the jury that it may disregard the nature of the funds, even though § 666(c) renders the criminal statute inapplicable to funds stemming from a bona fide salary or other compensation paid in the usual course of business. We note that trial counsel failed to object to this aspect of the jury instructions and so we review for plain error.

Viewing the instruction as a whole, we find no plain error. *In toto*, the instructions clearly convey that if Freeman legitimately obtained the Board's authorization for the expenditures she did not violate § 666. The district court did not invite the jury to find Freeman guilty regardless of whether the Board approved the expenditures merely by instructing that the jury "may consider"—rather than "must consider"—Board authorization in determining whether Freeman acted with criminal intent. Moreover, Freeman has not explained how the district court's alleged failure to refer specifically to subsection (c)

while discussing Freeman's authorization defense prevented the jury from considering this argument.

Fourth, Freeman claims that the district court improperly limited subsection (c) by describing it as applying only to the determination of whether the $5,000 threshold had been met. She asserts that this error precluded the jury from considering her defense that the Board had approved the payments. We have previously explained that subsection (c) applies to the entirety of § 666, *United States v. Mills,* 140 F.3d 630, 633 (6th Cir.1998), and, arguably, when read in isolation, the district court's instruction erroneously limits subsection (c)'s purview. However, taken as a whole, the jury instructions clearly communicated Freeman's authorization defense, and we find no plain error.

■ Finally, Freeman claims that it was error to conclude that the Board's inattention is of no consequence because the Board's diligence is necessary to determine what constitutes the "normal course of business" pursuant to § 666(c). Because trial counsel failed to object to this instruction at trial, we review only for plain error and conclude that this argument is without merit. Even if the Board was not diligent in monitoring the CMHA funds, a finding that the Board could have acted with greater care would not negate a finding that Freeman acted intentionally to misapply CMHA funds.

## B. More Than Minimal Planning

■ Freeman contends that the district court erred when it concluded at sentencing that the offense at issue involved more than minimal planning pursuant to § 2B1.1 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). This Court reviews a trial court's sentencing enhancement pursuant to U.S.S.G. § 2B1.1

for clear error. *United States v. Lutz,* 154 F.3d 581, 590 (6th Cir.1998).

Pursuant to the November 1, 1997 edition of the Sentencing Guidelines, which the district court deemed applicable to Freeman's sentencing, a trial court is permitted to increase an offense level by two points if the offense involved "more than minimal planning." U.S.S.G. § 2B1.1(b)(4)(A) (1997). The Guidelines define "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form" and explain that it is "deemed present in any case involving repeated acts over a period time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, cmt. n. 1(f) (1997). This Court has explained that " '[m]ore than minimal planning' can be deduced by more planning than is typical, repeated acts, and steps to conceal the crime." *United States v. Ellerbee,* 73 F.3d 105, 108 (6th Cir.1996). This Court has also noted that to be "more than minimal planning" the offense merely need be "something more than the crime in its simplest form." *Id.*

The district court's conclusion that the offense at issue involved "more than minimal planning" was not clearly erroneous. To the contrary, that conclusion is supported by substantial evidence in the record. Freeman's conduct in this case occurred over a period of five years and involved a well-planned pattern of misrepresentation and outright forgery concerning loan applications, federal income tax returns, and the financial activities of the CMHA. Her activities resulted in numerous checks being wrongfully paid out by CMHA on her behalf over a substantial period of time. In light of these facts, the district court's conclusion that this offense involved more than minimal planning was justified and, therefore, not clearly erroneous.

## C. Abuse of a Position of Trust

█ This Court reviews a district court's "abuse of a position of trust" determination *de novo*. *United States v. White*, 270 F.3d 356, 371 (6th Cir.2001) (citing *United States v. Tribble*, 206 F.3d 634, 635 (6th Cir.2000)). Section 3B1.3 of the Guidelines provides that: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. MANUAL § 3B1.3 (1997). In assessing whether this enhancement applies, this Court must determine "whether the defendant held a position of trust, and whether the position of trust facilitated the commission of the crime." *White*, 270 F.3d at 371.

Freeman claims that she did not have independent authority to approve the payments at issue. She claims that she was an administrator, not a fiduciary, and that Davis made the financial decisions for CMHA with which she would merely concur. Freeman also contends that, ultimately, the Board would issue the final approval concerning all CMHA decisions.

Freeman was CEO of CMHA and acted as would a senior executive of a private company. As such, Freeman and CMHA had an officer-organization relationship. The Sentencing Commission clearly contemplated U.S.S.G. § 3B1.3 applying to that type of relationship. As we have previously explained,

> The trust relationship arises when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs. Indeed, the guideline examples of where the enhancement is appropriate correspond to the types of relationships where fiduciary duties are often implied: physician-

patient, lawyer-client, officer-organization.

*Id.* (internal citation omitted).

As CEO, Freeman held the highest ranking position within CMHA. Although she contends that she and Davis made joint decisions, the evidence suggests that Freeman had authority over Davis. Moreover, a Board member testified that he did not question or verify what Freeman did as CEO.

The level of discretion accorded an employee "is to be the decisive factor in determining whether his position was one that can be characterized as a trust position." *United States v. Tribble*, 206 F.3d 634, 637 (6th Cir.2000). The position must be one that is "characterized by substantial discretionary judgment that is ordinarily given considerable deference." *United States v. Ragland*, 72 F.3d 500, 503 (6th Cir.1996). It is clear that Freeman had a tremendous amount of discretion and was able to commit the offenses of which she has been convicted by virtue of that discretion and her position of power and trust at CMHA.

Accordingly, the district court did not err in granting a sentencing enhancement for abuse of a position of trust.

## D. Ineffective Assistance of Counsel

█ Finally, Freeman argues that trial counsel was constitutionally ineffective because he failed to object to the jury instructions on Count One, in connection with the § 666 violation.

This Court generally does not review ineffective assistance of counsel claims on direct review. *See United States v. Turner*, 324 F.3d 456, 463 (6th Cir.2003). However, if a sufficiently developed factual record exists from which to review the defendant's allegations, we will allow the claim to be brought on direct appeal. *See United States v. Goodlett*, 3 F.3d 976, 980 (6th Cir.1993). The record in the present

case has not been adequately developed to permit us to consider Freeman's ineffective assistance claim. Accordingly, we decline to address this issue on direct appeal.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.