*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

TERRY ANN TATUM,

        *Defendant-Appellant.*

No. 07-5733

>

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 05-10066—James D. Todd, Chief District Judge.

Argued: February 8, 2008

Decided and Filed: March 5, 2008

Before: KENNEDY, MARTIN, and COLE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Victor L. Ivy, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Victor L. Ivy, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

---

**OPINION**

---

    R. GUY COLE, JR., Circuit Judge. Defendant-Appellant Terry Ann Tatum pleaded guilty to ten counts of bank fraud in violation of 18 U.S.C. § 1344. She appeals the district court's application of the United States Sentencing Guideline § 3B1.3 sentencing enhancement. Because this Court finds that § 3B1.3 was erroneously applied, we **VACATE** the sentence and **REMAND** for resentencing.

## I. BACKGROUND

    On August 15, 2005, Tatum was indicted on ten counts of bank fraud in violation of 18 U.S.C. § 1344. Tatum accomplished the bank fraud by abusing her position as office manager at MaxxGuard, a family-run business that supplied security guards to businesses. When Tatum started her employment at MaxxGuard in 1993, she was hired as the office secretary. Over time, she worked closely with the head of the company, Frank Lax, Sr., and eventually her duties became

1

more similar to those of an office manager than of a secretary. These duties included standard clerical work, as well as whatever else she was asked by Lax, Sr. to do, such as dispatching scheduled guards to specific locations. Following Frank Lax, Sr.'s death, Frank Lax, Jr. became Tatum's supervisor, and he terminated her employment in January, 2005 for insubordination.

While office manager, Tatum had no authority to sign company checks. However, her job responsibilities did include preparing checks to cover outstanding obligations of the company that would be presented for signing to Frank Lax, Sr. and later Frank Lax, Jr. When printing the checks, she had been instructed by MaxxGuard's accountant to record the details of the check in one file, to maintain copies of the bank statements as they arrived, and to forward copies of the bank statements but not the cancelled checks to the accountant.

To accomplish her fraud, Tatum simply printed MaxxGuard checks payable in her name, often forging the name of Lax, Sr., and deposited the checks into her personal bank accounts. She maintained copies of the checks, but created fictitious payees on the printed copies that she had been instructed to make. Also, as instructed by the accountant, Tatum maintained the bank statements in a file, at first destroying copies of the returned checks that would have shown her own name as payee upon close inspection, but later filing them as well. These copies of returned checks were not inspected by the accountant because the type was too small for him to read, and thus he did not discover that MaxxGuard was making a large number of payments to Tatum. In this way, Tatum was able to defraud her employer by creating no fewer than 543 fraudulent checks. When confronted with the scheme, Tatum admitted her involvement and maintained that she had since spent all of the embezzled funds.

Tatum entered into a plea agreement with the Government, in which she agreed to plead guilty to ten counts of bank fraud in violation of 18 U.S.C. § 1344 and the Government agreed to dismiss the other counts; she entered her guilty plea on January 11, 2006. At the plea hearing, the district court stated the dollar amount of the fraud, $190,747.13, and informed Tatum that the crime carried "with it a maximum penalty of 30 years, a fine of not more than a million dollars, or both, not more than five years of supervised release, and a mandatory special assessment of $100." The district court accepted Tatum's guilty plea and informed Tatum that the sentence would be determined at a later date and would depend on the probation officer's report, which would include a range of sentences that the court would use as a factor in deciding Tatum's sentence.

The Probation Officer submitted his Presentence Investigation Report ("PSR") on February 27, 2006. The PSR detailed the fraud and addressed Tatum's education and skill level. The PSR included a finding that Tatum received formal education through the tenth grade and had learned various clerical and computer skills through on-the-job training. The PSR also stated that Tatum had worked for numerous employers, including several convenience stores, but that most of these jobs lasted only a few months. The PSR recommended a three-level reduction for acceptance of responsibility, but also a two-level enhancement under § 3B1.3 for abusing a position of private trust. These adjustments resulted in a Guidelines range of 21 to 27 months. The PSR also recommended an order of restitution pursuant to 18 U.S.C. § 3663A in the agreed upon amount of $190,747.13.

Tatum timely filed her objection to the PSR's recommended application of the § 3B1.3 enhancement, arguing that she had not abused a position of trust and that she had no special skills, as she had only finished the tenth grade. Tatum argued that if the enhancement did not apply, the resulting Gudelines range would be 15 to 21 months. Tatum additionally argued that given the several months she had already served, a sentence of probation would be appropriate for the remainder of her sentence.

The district court considered the PSR and Tatum's objections at the sentencing hearing held on June 5, 2007. The court ultimately found that the enhancement was proper and sentenced Tatum at the bottom of the recommended Guidelines range: 21 months with credit for 7 months served, for a total of 14 months. The court explained its decision to apply the enhancement:

> It's my judgment that even though Ms. Tatum didn't have any special education, she did, in fact, have special skills. From her years of work as a bookkeeper or an office manager, she developed special skills related to the check procedure.
>
> . . . .
>
> Based upon the way this office ran, as I understand it, Ms. Tatum was the only person who could have accomplished such a scheme. And it appears to the court to be, clearly, an abuse of a position of private trust. She was given the trust of Mr. Lax, Sr., and ultimately Mr. Lax, Jr., to run the office, to write the checks - - to generate the checks, and to keep up with the accounting end of the checks; and she abused that position of trust.
>
> In addition, she admitted to forging some of these checks, then destroying the checks when they were returned by the bank.
>
> This clearly was an abuse of a position of trust, so the probation officer has appropriately enhanced the base offense level by two levels.

The defendant appeals her sentence, contesting the application of the § 3B1.3 enhancement.

## II. ANALYSIS

### A. Standard of Review

When determining whether the § 3B1.3 enhancement has been properly applied, this Court "review[s] a district court's legal conclusions regarding the Sentencing Guidelines de novo and a district court's factual findings in applying the Sentencing Guidelines for clear error. We apply de novo review to the district court's interpretation of the Guidelines." *United States v. Kaminski*, 501 F.3d 655, 665 (6th Cir. 2007) (internal quotations omitted) (citing *United States v. Galvan*, 453 F.3d 738, 739 (6th Cir. 2006)). Thus, de novo review applies to the district court's intepretation of the Guidelines' definition of "position of trust" and "special skills." *See id.* at 665; *see also United States v. Godman*, 223 F.3d 320, 322 (6th Cir. 2000).

### B. Definition of the Enhancement

Section 3B1.3 of the United States Sentencing Guidelines, titled "Abuse of Position of Trust or Use of Special Skill," states in full:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by **2** levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3 (2005) (emphasis in original).

The relevant explanation for the definition of "public or private trust" is found in the Guidelines Manual at Note 1:

> *Definition of "Public or Private Trust".* — "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

*Id.* § 3B1.3 n.1.

The relevant explanation of "special skill" is found in the Guidelines Manual at Note 3:

> "Special skill" refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.

*Id.* § 3B1.3 n.3.

## C. Tatum Did Not Occupy a Position of Trust

When this Court determines whether an individual occupies a position of trust, we focus on the relationship between the defendant and the victim of the crime. That is, we have "previously indicated that the rationale for the sentencing enhancement at issue here is virtually analogous to the type of punishment routinely administered for violating a fiduciary duty, which involves a higher duty than is placed upon persons that do not occupy positions of trust." *United States v. Gilliam*, 315 F.3d 614, 618 (6th Cir.), *cert. denied*, 540 U.S. 1155 (2004) (citing *United States v. Ragland*, 72 F.3d 500, 503 (6th Cir. 1996)). A "position of trust arises almost as if by implication when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs." *Id.* (internal quotations and citations omitted). The *Gilliam* Court further states that the examples in the Guidelines of trust relationships "translate directly to the types of relationships where a 'fiduciary duty' exists by implication (e.g., physician-patient, lawyer-client, officer-organization, etc.)." *Id.* Because Tatum's position was clerical in nature and lacked the type of discretion and authority that characterize the fiduciary-like positions that are appropriate for the § 3B1.3 enhancement, we conclude that she did not hold a position of trust.

Our precedent has made clear that application of the enhancement is appropriate where the position occupied by the defendant involved considerable discretion and authority. *See, e.g.*, *United States v. Smith*, No. 06-1218, ___ F.3d. ___, ___ (6th Cir. 2008) (approving of enhancement where the executive director of a chapter of the American Red Cross embezzled funds from the nonprofit); *United States v. Hudson*, 491 F.3d 590, 596 (6th Cir. 2007) (approving of enhancement for

contractor who had authority to develop a television station without supervision); *Kaminski*, 501 F.3d at 667 (approving of application of enhancement to a defendant holding herself out as a doctor in the community); *Gilliam*, 315 F.3d at 616-17 (approving of enhancement for drug- and alcohol-counselor who acted as a contractor for the probation department). While Tatum was given the authority to prepare checks to present to the owner of the company for his signature, she was not given authority to decide whether or not the checks should be written or signed. As noted by this Court in *United States v. Tribble*, 206 F.3d 634, 637 (6th Cir. 2000), "just because we trust a person to handle another person's property in the course of their job does not mean they occupy a 'position of trust' for the purposes of § 3B1.3." *Id.* The *Tribble* Court then held that a postal-office window-clerk did not hold a position of trust, despite having access to the computer system and money orders, and despite being infrequently audited. *Id.* Tatum's position of office manager is thus similar to that of the employee in *Tribble*: "[E]ven though [the Defendant's] position significantly aided [her] in the commission and concealment of [her] offense, we do not believe that fact overrides the inherently clerical nature of [her] position." *Id.*

That Tatum's position was not a position of trust becomes even more clear upon a review of those cases in which this Court has approved of the application of an enhancement to employees diverting funds through the use of checking accounts. This Court has only applied the enhancement to situations in which the defendant had actual check-writing authority, and it has only done so in cases where the defendant's overall position involved substantially more discretion and authority than that of an office manager. *See e.g.*, *United States v. Madison*, 226 F. App'x 535, 550 (6th Cir. 2007) (holding that the executive director of a non-profit, "[g]iven her use of authority to direct payments and write checks, clearly held a position of trust and relied on that position to convert [] funds"); *United States v. Pavcovich*, 92 F. App'x 259, 261 (6th Cir. 2004) (order) (finding that a bank vice-president who embezzled funds through a check-writing scheme "held a fiduciary or trust-like relationship to the bank"); *United States v. Freeman*, 86 F. App'x 35, 37-38, 43 (6th Cir. 2003) (holding that chief executive officer of non-profit organization used discretion "to cause the organization to pay her mortgages without knowledge of the directors").

Tatum functioned as a regular employee of the company, not as a fiduciary-like employee. "The rationale for the sentencing enhancement is akin to punishment for violating a fiduciary duty, a higher duty than the ordinary one placed on all employees and breached by conversion. The trust relationship arises when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs." *United States v. Brogan*, 238 F.3d 780, 783 (6th Cir. 2001) (citing *Ragland*, 72 F.3d at 503). While MaxxGuard was injured because Tatum abused her position, the company at no time gave Tatum discretion to exercise her judgment or assert control over the finances of the company. While its true that Tatum's fraud went undetected for so long because her actions were largely unsupervised, "the touchstone for a finding that the defendant occupies a position of trust is not necessarily the amount of supervision the person receives, although that is an important factor to consider, but rather the amount of discretion the person has in his or her employment." *United States v. McCollister*, 96 F. App'x 974, 976 (6th Cir. 2004) (citing *Brogan*, 238 F.3d at 783; *Tribble*, 206 F.3d at 637; *Ragland*, 72 F.3d at 502). Here, Tatum's position did not include the type of discretion and authority that this Court has continuously required before a defendant's sentence can be enhanced under §3B1.3.

The Government and the district court rely upon *United States v. Allison*, 59 F.3d 43 (6th Cir. 1995), in support of application of the enhancement. The defendant in *Allison* pleaded guilty to a scheme very similar to the one that Tatum developed, but the plea agreement in that case included the § 3B1.3 enhancement as part of the agreement. *Id.* at 44. The *Allison* Court concluded that Allison had waived her right to appeal, but also noted that if the Court were to address the merits, it would determine that the enhancement was appropriately applied. *Id.* at 46. The Court specifically stated as follows:

> Moreover, were we to address the issue, we would reject Allison's claim because she occupied a position of trust that allowed her to alter checks and conceal her actions. Allison was the last [] employee to handle the checks after they were signed, the first [] employee to examine the cancelled checks after the bank returned them to the company, and the person responsible for reconciling [the] checking account. Indeed, it is highly unlikely that anybody else at Provident could have committed, and concealed, this crime. Accordingly, the district court properly determined that Allison abused a position of trust.

*Id.* at 46. Thus, the *Allison* Court disposed of the case based on its finding that Allison had waived her right to appeal and had knowingly and voluntarily accepted the enhancement in her plea bargain. However, this statement is dictum and is in conflict with this Court's approach to the § 3B1.3 enhancement. Accordingly, *Allison* is inapposite.

**D. Tatum Did Not Possess Special Skills**

There is no evidence that Tatum possessed "special skills" as the term is defined for purposes of § 3B1.3, and the Government does not argue for an enhancement on this basis. Nonetheless, the district court stated that Tatum utilized special skills because:

> [E]ven though Ms. Tatum didn't have any special education, she did, in fact, have special skills. From her years of work as a bookkeeper or an office manager, she developed special skills related to the check procedure.

However, special skills are those that are not possessed by the general public, and the application notes to the Guidelines limit the skill set to those "usually requiring substantial education, training or licensing." U.S.S.G. § 3B1.3 n.4. *See also United States v. Wilson*, 345 F.3d 447, 449 (6th Cir. 2003) (using the Sentencing Guideline's definition of special skill); *United States v. Sawaf*, 129 F. App'x 136, 145 (6th Cir. 2005) (same). The skills possessed by Tatum as an office manager – even as a skilled and experienced office manager – do not qualify as special skills for the purpose of the enhancement. *See United States v. Humphrey*, 279 F.3d 372, 382 (6th Cir. 2002) (concluding that a bank employee with no formal education or training beyond high school did not have special skills despite having worked at the bank for over twenty years and having "expertise in accounting procedures").

### III. CONCLUSION

For the preceding reasons, we find that the § 3B1.3 enhancement was erroneously applied and therefore **VACATE** Tatum's sentence and **REMAND** for resentencing.