**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1978
_____

UNITED STATES OF AMERICA

v.

TAMMY LAIRD,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:18-cr-00337-001)
District Judge: Hon. Nora Barry Fischer
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 18, 2023

Before: HARDIMAN, PORTER, and FISHER, *Circuit
Judges*.

(Filed:  May 4, 2023)

Lisa B. Freeland
Stacie M. Fahsel
Samantha L. Stern
Office of the Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

  *Counsel for Appellant*


Donovan J. Cocas
Laura S. Irwin
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

  *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge*.

Tammy Laird appeals the District Court's judgment sentencing her to 21 months in prison after she pleaded guilty to wire fraud. We will affirm.

I

Laird grew up in Corsica, Pennsylvania, a rural borough with some 357 residents and two businesses. Corsica is

governed by a seven-person Council that meets once a month. In 2009, the Council hired Laird to be the Borough secretary/treasurer—the Borough's only paid staff position—at $12.50 per hour. Her duties included: handling Borough funds, opening mail, maintaining financial records, preparing Council meeting agendas and financial reports, and updating the Council on the status of the Borough's finances at monthly meetings. Laird was also the point person for Borough audits. Finally, only Laird and the Council President were then authorized to sign Borough checks. Though two signatures were required, the President "common[ly]" provided Laird with signed blank checks to avoid traveling every time a check was needed. App. 349.

Between 2009 and 2017, Laird pilfered funds from the Borough. She wrote unauthorized checks from the Borough's bank account to herself and her husband. She paid her personal expenses by electronically transferring Borough funds. And she used the Borough's Staples credit card to purchase personal items like gift cards, a computer, and other electronics. All told, Laird embezzled $345,600.79. The Borough was so financially devastated that it doubled property taxes to recoup some of its losses.

Laird was indicted on 26 counts of wire fraud in violation of 18 U.S.C. § 1343. She pleaded guilty to the indictment without a plea agreement. The Presentence Investigation Report (PSR) recommended two enhancements under the United States Sentencing Guidelines (U.S.S.G.): (1) a two-level increase under § 3B1.3 for Laird's abuse of a position of trust; and (2) a twelve-level increase under

§ 2B1.1(b)(1)(G) for loss between $250,000 and $550,000.[1] After decreasing three levels for Laird's acceptance of responsibility, the PSR calculated a Guidelines sentencing range of 27 to 33 months' imprisonment.

Before sentencing, Laird and the Government disputed whether Laird's legitimate income as secretary/treasurer reduced the total loss below $250,000. Laird also argued that she did not hold a position of public or private trust. The District Court concluded that Laird's legitimate salary did not reduce the total loss below $250,000, thereby triggering the 12–level increase in U.S.S.G. § 2B1.1(b)(1)(G). The Court also applied the two-level abuse-of-trust enhancement, resulting in an advisory Sentencing Guidelines range of 27 to 33 months in prison. But the Court varied downward, sentencing Laird to 21 months' imprisonment and three years' supervised release. It also ordered $266,050.79 in restitution (which incorporated the Government's offset for Laird's legitimate income). Laird timely appealed.

## II[2]

Laird challenges the application of the abuse-of-trust enhancement and the District Court's calculation of the proper loss amount. She also faults the District Court for failing to hold an evidentiary hearing to determine the loss. Whether a

---

[1] While the PSR adopted the Government's original loss figure of $306,266.20, the parties later stipulated to a total loss of $296,877.79. This figure included an offset of $48,723, which Laird had repaid to the Borough during her scheme.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

defendant occupied a position of public or private trust for purposes of U.S.S.G. § 3B1.3 is a legal question over which we exercise plenary review. *United States v. Douglas*, 885 F.3d 124, 129 (3d Cir. 2018) (en banc). We review the District Court's factual findings underlying the abuse-of-trust enhancement and its loss calculations under § 2B1.1 for clear error. *United States v. Dullum*, 560 F.3d 133, 137 (3d Cir. 2009). And we review the court's "refusal to grant . . . an evidentiary hearing for abuse of discretion." *United States v. Kluger*, 722 F.3d 549, 561 n.21 (3d Cir. 2013).

A

Laird first claims the District Court erred by imposing the abuse-of-trust enhancement under U.S.S.G. § 3B1.3. Section 3B1.3 states: "If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." In *United States v. Douglas*, we set forth a two-pronged test for applying this enhancement. 885 F.3d at 130. First, we determine whether the defendant occupied a position of trust. *Id.* If she did, we then determine whether she abused that position in a manner that significantly facilitated her crime. *Id.* Laird contests only the first prong.

A defendant occupies a position of trust if a preponderance of the evidence shows that she "had the power to make decisions substantially free from supervision based on (1) a fiduciary or fiduciary-like relationship, or (2) an authoritative status that would lead [her] actions or judgment to be presumptively accepted." *Id.* at 133; *United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007) (preponderance standard applies for all facts relevant to the Guidelines). That framework follows the Guideline Application Note, which

instructs that a position of trust is "characterized by . . . substantial discretionary judgment that is ordinarily given considerable deference[]." U.S.S.G. § 3B1.3 cmt. n.1. Laird opposed the application of § 3B1.3, claiming that she lacked the necessary "decision-making power based upon a fiduciary relationship or authoritative status." Laird Br. 27–28. Instead, Laird contends that the record shows at most that she occupied a "ministerial or clerical role" in which she merely "had access to Borough funds, was subject to lax supervision, and was trusted in the colloquial sense." Laird Br. 28. We disagree.

The record shows that the Council "presumptively accepted" Laird's actions and advice as the basis for much of its decision-making such that she acted "substantially free from supervision." *Douglas*, 885 F.3d at 133. Laird was responsible for setting the monthly Council meeting agenda, preparing the financial reports presented at that meeting, and selecting correspondence to show the Council, all without any oversight. The Council used these documents to decide which bills to pay and which projects to approve. So Laird's discretionary judgment about what financial information the Council needed to govern the Borough received "considerable deference." U.S.S.G. § 3B1.3 cmt. n.1. Similarly, the Council designated Laird as the point person for annual audits, which the Borough relied on to apply for state funding. There is no evidence that any other Council member reviewed her submissions or was present at the audit exit conference. Laird thus had an "authoritative status" when managing audits as well. *See Douglas*, 885 F.3d at 133. And apart from the Council President, Laird was the only one authorized during the relevant period to sign checks on the Borough's bank account.

Laird's responsibilities as secretary/treasurer of the Borough are thus distinguishable from the clerical

6

responsibilities of other employees in the cases Laird cites. For example, in *United States v. Tann*, 532 F.3d 868 (D.C. Cir. 2008), the defendant was responsible for preparing checks for signature and maintaining check ledgers, but she lacked authority to sign checks herself. *Id.* at 870–71, 875. Similarly, in *United States v. Tatum*, 518 F.3d 369 (6th Cir. 2008), the defendant had "authority to prepare checks to present to the owner of the company for his signature" but "was not given authority to decide whether or not the checks should be written or signed." *Id.* at 373. Unlike those defendants, Laird was one of two individuals authorized to endorse checks, and she exercised significant influence over whether certain financial information should be presented to the Council and to auditors. *Cf. United States v. Ollison*, 555 F.3d 152, 167 (5th Cir. 2009) (finding the enhancement improper when an employee misused a company credit card that was issued to over one thousand employees); *United States v. Edwards*, 325 F.3d 1184, 1185, 1187 (10th Cir. 2003) (finding the enhancement improper when an employee handled accounts receivable but lacked "authority to make substantial discretionary judgments regarding company revenues or expenses").

Laird is also distinguishable from the defendant in *Douglas*, an airport mechanic, whose job did not require him to "exercise any judgment, much less judgment that others accepted." *Douglas*, 885 F.3d at 135. As treasurer, Laird was entrusted with the only paid staff position in local government. And the Council relied on her judgment in presenting documents at monthly meetings and signing checks for the Borough.

We agree with Laird that mere access is not enough to justify application of this enhancement. *See id.* But as the Borough secretary/treasurer, Laird had the power to make

7

decisions substantially free from supervision. The District Court did not err when it applied the abuse-of-trust enhancement.

B

Laird next contends that the District Court erred in finding that her embezzlement caused losses between $250,000 and $550,000, justifying a 12-level enhancement under U.S.S.G. § 2B1.1(b)(1)(G). A district court must make "a reasonable estimate of the loss, based on available information in the record." *United States v. Shah*, 43 F.4th 356, 366 n.12 (3d Cir. 2022) (cleaned up). Though the Government must prove the amount of loss, "a defendant can have the amount of loss from a theft reduced by the fair market value of any legitimate services [she] rendered to [her] victim." *United States v. Scarfo*, 41 F.4th 136, 213 (3d Cir. 2022) (citing U.S.S.G. § 2B1.1 cmt. n.3(E)(i)).

Laird contests only the District Court's calculation of her legitimate income from 2014 through 2017. Before sentencing, the Government obtained Laird's federal tax records from 2012 to 2017. Those records showed $30,827 in legitimate income from Laird's employment with the Borough. The Government deducted that amount from $296,877.79, resulting in a total loss of $266,050.79. Laird countered that the Court should use only her Borough income from 2012, which she reported as $19,904, and estimate her income for 2013–2017 as $8,000 per year based on Council budget projections and meeting minutes.[3] But that request

_____

[3] Laird's income was significantly higher in 2012 because she had worked more hours for the Borough's sewage plant during

8

contradicted her tax returns, which reported $8,283 in 2013, $2,640 in 2014, and no income for 2015–2017. Using $8,000 for 2013–2017, Laird's proposed offset amount totaled $59,904, bringing the total loss below $250,000. The District Court concluded that the Government showed a loss amount between $250,000 and $550,000, finding not credible Laird's evidence that she earned $8,000 from 2014 to 2017.

Laird argues that her tax records were unreliable evidence of her legitimate income for two reasons. First, she failed to report to the IRS funds she fraudulently obtained from the Borough. Second, she reported no income for 2015–2017 even though she performed work for the Borough during that time. We reject the fallacy Laird proffers: her failure to disclose the money she embezzled doesn't compel the conclusion that she also hid her legitimate income. It would be the unusual fraudster who disclosed her ill-gotten gains to the Internal Revenue Service. And it would be similarly odd for an employee not to disclose her legitimate wages. As the Court pointed out, Laird offered no timesheets, paystubs, W-2s, or other documents showing the actual number of hours she worked or income she earned during the relevant period that would have cast doubt on her tax records.

Even if Laird did some legitimate work for the Council in the years she reported no income, the District Court concluded that the loss still would not have fallen below $250,000. Laird was approved to work only between 20 and 30 hours per month, at a rate of $12.50 per hour. So she would have had to work about 53 hours a month in order to legitimately earn $8,000 per year—an effort well above her job

that year. The Borough sold the sewage plant at the end of 2012.

9

requirements. And there was no evidence in the record that Laird worked that much in 2015–2017. So the District Court reasonably found that the evidence "support[ed] an annual salary of, at most, $3,000 or $4,500 . . . [rather] than the proffered estimate of $8,000" for the years Laird reported no income. App. 43. And whether the minimum figure from the tax records or the maximum $4,500 figure per year is used, the loss Laird caused was still greater than $250,000.

Nor did the District Court err when it rejected the other evidence submitted by Laird to establish her income. The Council budget reports prepared by Laird projected—not recorded—secretary payroll. And the budgets often projected below $8,000. The District Court also reasonably rejected the Council meeting minutes as corroboration because they did not show the actual budget adopted by the Council at any given meeting. We thus cannot say that the District Court's findings of fact about Laird's legitimate income leave us with the "definite and firm conviction that a mistake has been committed." *United States v. Lowe*, 791 F.3d 424, 427 (3d Cir. 2015).

Laird finally contends that the District Court should have held an evidentiary hearing to determine her legitimate income. But "[t]he sentencing guidelines and Federal Rules of Criminal Procedure do not require that a district court conduct an evidentiary hearing in addition to a sentencing hearing at which the parties can be heard." *Kluger*, 722 F.3d at 562. Here, the parties agreed that it would be "feasible to conduct the hearing on loss and the sentencing hearing in a single proceeding." App. 156. Laird had the opportunity to present additional evidence of loss at sentencing, but she did not do so. So the Court did not err.

10

\*     \*     \*

For the reasons stated, we will affirm the District Court's judgment of sentence.